## Klever Shampay Karpet Kleaners, Inc., Appellee, v. City of Chicago et al., Appellants.

## Gen. No. 30,323.

1. APPEAL AND ERROR—*scope of review where exceptions not passed on below.* Where at time of order appealed from report of master stood upon exceptions, and record does not show that they were passed upon, Appellate Court is bound to consider the case upon the pleadings alone.

2. APPEAL AND ERROR—*interlocutory order subject to review.* An order which directed that an injunction theretofore issued, which had expired, be and remain in full force and effect, held to constitute an interlocutory order subject to review, under Practice Act, section 123, Cahill's St. ch. 110, ¶ 122.

3. APPEAL AND ERROR—*appealability of interlocutory orders.* Before the passage in 1887 of section 123 of the Practice Act, Cahill's° St. ch. 110, ¶ 122, appeals could not be taken from interlocutory orders or decrees.

4. APPEAL AND ERROR—*review of constitutional questions.* Even though a constitutional question is involved, the Appellate Court has jurisdiction of an appeal from an interlocutory order, under Cahill's St. ch. 110, ¶ 122.

5. MUNICIPAL CORPORATIONS—*building code requiring separation of buildings invalid.* Chicago Building Code of 1922, sec. 1416, requiring benzine rooms operated by dry cleaners to be in a building separated by 50 feet from other buildings, is unreasonable.

6. MUNICIPAL CORPORATIONS—*dry-cleaning business subject to regulation.* The City of Chicago has authority reasonably to regulate the dry-cleaning business.

7. MUNICIPAL CORPORATIONS—*ordinance must be reasonable.* The requirements of an ordinance regulating business must be adapted to the objects sought and not manifestly unreasonable, and must not be oppressive and unreasonable.

292    APPELLATE COURTS OF ILLINOIS.

Klever Shampay Karpet Kleaners v. Chicago, 238 Ill. App. 291.

8. CONSTITUTIONAL LAW—*police power defined.* Police power means the power of promoting the public welfare by restraining and regulating the use of liberty and property.

9. CONSTITUTIONAL LAW—*regulatory ordinance as deprivation of property without due process.* Chicago Building Code 1922, sec. 1416, requiring building of dry-cleaner containing benzine room to be separated from other buildings by at least 50 feet, is unconstitutional as depriving owner of property without due process of law.

10. EMINENT DOMAIN—*building code deprivation of property without compensation.* Chicago Building Code 1922, sec. 1416, requiring building of dry-cleaner containing benzine room to be separated from other buildings by at least 50 feet, is unconstitutional as depriving owner of property without compensation.

11. MUNICIPAL CORPORATIONS—*ordinance valid in part.* Chicago Building Code 1922, secs. 1412-1421, regulating buildings for dry-cleaning establishments, is valid and in force except as to section 1416 which is invalid.

12. INJUNCTIONS—*mandamus proper remedy to obtain building permit.* All of Chicago Building Code 1922, secs. 1412-1421, being valid except section 1416, dry-cleaner refused permit to construct building was bound to pursue his remedy by petition for mandamus and was not entitled to go into equity to restrain city officials from enforcing such parts of the Building Code.

13. EQUITY—*multiplicity of suits not shown.* Court of equity did not have jurisdiction of suit to restrain city officials from enforcing sections of Building Code relating to dry-cleaning establishments on the theory that a multiplicity of suits was threatened, where conditions affecting the various dry-cleaning establishments were not similar and a decision affecting complainant's situation would not determine questions which would arise in other suits.

Appeal by defendants from interlocutory order of the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1925. Reversed. Opinion filed October 21, 1925.

FRANCIS X. BUSCH, for appellants; ALBERT H. VEEDER, of counsel.

SCHUYLER, ETTELSON & WEINFELD, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On March 6, 1925, the complainant, Klever Shampay Karpet Kleaners, a corporation, filed a bill of complaint asking that the City of Chicago and certain of its officers and agents be restrained from interfering with the construction of a certain building to be used by the complainant in Chicago in its dry-cleaning business. On March 11, 1925, the defendants demurred. On March 14, 1925, having obtained leave, the complainant filed an amended bill. On March 20, 1925, the defendants filed an answer. On March 24, 1925, although an answer already had been filed, an order was entered that the demurrer stand to the amended bill. On the same day an order was entered overruling the demurrer, and granting the defendants leave to file an answer. On April 3, 1925, the complainant filed a replication.

On April 6, 1925, the chancellor entered an order granting an injunction for ten days, and referred the cause to a master. That order, as far as it pertained to the injunction, restrained the defendants from enforcing sections 1412 to 1421, both inclusive, of the Chicago Building Code of 1922, against the complainant as to the erection of the building in question.

On April 16, 1925, permission having been obtained, the defendants filed an amended answer, stating therein that the ordinance referred to was valid, and that the complainant was not entitled to the relief prayed.

On the same day, an order was entered extending the injunction for a period of ten days. On April 22, 1925, an order was entered extending the injunction for a period of fifteen days. On May 7, 1925, a report of the master was filed. Therein the master found that the dry-cleaning ordinance is unconstitutional and void, and recommended that the temporary injunction be made permanent.

On May 9, 1925, an order was entered by the chancellor that the objections to the master's report stand as exceptions. On May 11, 1925, an order was entered

placing the cause on the trial calendar. And on the same day, on motion of the solicitors for the complainant, an order was entered that the injunction theretofore issued be and remain in full force and effect until the further order of the court.

On June 20, 1925, an order was entered, re-referring the cause to the master "for further hearing and report as to the law and facts."

This appeal is from the above-mentioned injunction order of May 11, 1925.

There is nothing in the record that shows whether the chancellor in entering the order of May 11, 1925, based his judgment in any way on the evidence taken before the master, or was in any way advised by his findings. At the time the order of May 11, 1925, was entered, the report of the master stood upon exceptions, and the record does not show that they were passed upon. The record does show that there was a re-reference but that order was merely general to take evidence and report. We are bound, therefore, to consider the case upon the pleadings alone.

The complainant in its amended bill alleged that it has since March, 1924, carried on a general cleaning and dyeing business at 4631-4641 Cottage Grove avenue, in Chicago, of which premises it has a lease, expiring on April 31, 1934; that the property has a frontage of 125 feet on Cottage Grove avenue, and a depth of 157 feet, extending to an alley in the rear; that Cottage Grove avenue in that vicinity is a business street; that the property is improved with a modern one-story fireproof brick building covering the whole above described area of ground; that it has had architect's plans made for the reconstruction and remodeling of the building so as to make two separate buildings, one a one-story fireproof brick building covering the whole area except the northwest corner, measuring 25 by 82 feet, within which building it would maintain its office, wet wash equipment,

receiving and shipping departments connected with its rug washing and cleaning process; and the other, on the 25 by 82 feet area, a modern one-story fireproof brick building, to be used for the dry cleaning process, containing a wash and benzine room, the benzine room, 29 by 30 feet, equipped with modern dry-cleaning machinery, to be separated from the other by a 12-inch fireproof brick wall, without openings; that it is provided that the wash and benzine rooms will be separated from all other buildings by fire walls of brick not less than 12 inches in thickness and without openings into any adjoining building; that it is further provided that all the apparatus and machinery to be installed in the benzine or naphtha room will be in accordance with the requirements of the city ordinances.

It is further alleged that on February 25, 1925, it applied to the Commissioner of Buildings for a permit to make the alterations, but, although the plans and specifications had been approved by the Commissioner of Health and the Commissioner of Buildings, they were disapproved by the Chief of the Bureau of Fire Prevention and Public Safety, on the ground that the proposed benzine building was to be located in a building which was not detached at least 50 feet from any other building or from the line of adjoining property which might be built upon, as required by sections 1412 to 1421, both inclusive, of the Chicago Municipal Code of 1922, and a permit was refused. It is further alleged that the City has not the power to regulate dry cleaning; that as the ordinance is not a general ordinance applicable to all persons and corporations using gasoline, benzine, naphtha or other volatile oils, under circumstances essentially similar to those under which such substances are used by the complainant and other dry cleaners, but is arbitrary and discriminatory in that it singles out dry cleaners for regula-

296    APPELLATE COURTS OF ILLINOIS.

Klever Shampay Karpet Kleaners v. Chicago, 238 Ill. App. 291.

tion and not others, it is not a lawful exercise of the power granted to cities and villages.

It is further alleged that subsequent to the enactment of paragraph 65 of section 1 of article V of the Cities and Villages Act [Cahill's St. ch. 24, ¶ 65, subd. 65], the City Council of Chicago passed a comprehensive ordinance, governing the storage of gasoline, benzine, naphtha and other inflammable liquids, which was on November 22, 1922, re-enacted, with certain amendments as chapter XLI and sections 2276 to 2374, inclusive, of the Chicago Municipal Code; that the only provisions in the ordinance—sections 1412 to 1421—that are not contained in the general ordinance are (1) the provision concerning the payment of an additional fee, and (2) the provision specifying that any benzine room constructed by a dry-cleaner must be located at least 50 feet distant from any other building; that said provisions are invalid and void.

It is further alleged that the general ordinance on inflammable liquids is based on scientific treatment of the subject, whereas the ordinance in question is not, but is arbitrary and unreasonable; that gasoline, benzine and naphtha are staple articles of commerce and their use is not confined to any large extent to the business of dry cleaning, but that they are used in innumerable ways in industries and private homes; that in many businesses they are used in far larger quantities and under far more dangerous circumstances than in the dry-cleaning business, that, therefore, there is no sufficient reason for placing dry cleaners and spotters in a class by themselves, or requiring of them additional building requirements or supervision.

It is further alleged that there are seventy-five to eighty dry cleaners in Chicago in a similar situation to the complainant; that some of them are operating benzine rooms without having complied with the ordinance in question and are threatened with arrest;

that actions have been begun against some of them for its violation; that many dry cleaners, who have complied with all the lawful ordinances, are desirous of operating benzine rooms but are prevented because the city insists upon enforcing the 50-foot requirement of section 1416; that, as a result, a multiplicity of suits is threatened and will occur unless the matters involved are determined in one suit.

It is further alleged that the complainant has invested in the dry-cleaning business more than $75,000; that it has built up a valuable and permanent business; that heretofore it has not had any benzine room, but in order to retain its customers it is necessary for it to do both wet wash and dry cleaning; that most first-class cleaners do both and are permitted to do so in plants similar in nature and similarly located in respect to other buildings as the plant provided for in complainant's plans and specifications; that the following dry-cleaning plants, Hygienic Cleaning Company, National Cleaners, Drexel Cleaners and Dyers, and Abe Marks, have been licensed and permitted to operate, and are operating without the benzine room being detached 50 feet from any other building; that refusal to grant the permit in question is an unjust discrimination, and unless the city is enjoined from interfering, the complainant will suffer irreparable damage.

It is further alleged that sections 1412 to 1421, both inclusive, are invalid because the city is without power to license, regulate, control or locate the business of dry cleaning; that they constitute an attempt to license the dry-cleaning business without power to do so, and are, therefore, invalid and in violation of the constitutions of both the State and the United States; that they are invalid and in violation of the Constitution of the State and the United States because they require the written consent of a majority of all property owners according to frontage on both sides of the street sur-

298    Appellate Courts of Illinois.

Klever Shampay Karpet Kleaners v. Chicago, 238 Ill. App. 291.

rounding the block in which two-thirds of the property on both sides of the streets surrounding such block is used exclusively for residence purposes; that such a limitation is unreasonable and arbitrary.

It is further alleged that section 1416 is illegal and void and in violation of the constitution of the State and United States in that it requires every building used for dry cleaning to be at least 50 feet from any other building or from the line of adjoining property which may be built upon; that such limitation is confiscatory and would prevent the establishment of dry-cleaning plants within the city and would drive the business out of existence; that section 1416 is further invalid, as it excepts from the 50-foot provision places where such a business was carried on prior to July 22, 1912, and there were buildings separated from all other buildings by fire walls with no openings into adjoining buildings; that the limitation and exception is discriminatory and unreasonable and tends to foster a monopoly on the part of the dry cleaners operating prior to July 22, 1912, and is, therefore, invalid and contrary to the Constitution of the State and the United States.

The answer of the city alleges that the complainant has in the past carried on a cleaning business wherein only soap and water were used, and at no time did the complainant use gasoline, benzine or other inflammable liquids in connection with its business; that the complainant has proposed to modify the building by creating an open court in the center of the building, which, in the judgment of the defendant, would not be safe, and would constitute a fire hazard.

The answer denies that the premises are improved with a fireproof building, and avers that the building thereon is a one-story building; that the ceiling of the building is an open joist wood ceiling, covered with tar paper resting on unprotected steel trusses; that when a steel truss is not protected from heat

by insulating material it is dangerous as a fire hazard, as it readily bends and allows the roof to collapse when subjected to the heat of a small fire.

By the answer, it is further averred that the outside wall of the building on each side is joined to the outside wall of the adjoining building; that it is proposed to modify the building by creating an open court without a roof in the center part of the building, but if that is done there is no way by which fire fighting equipment could be brought into the open court; that there is no opening from the outside by which firemen could reach the open court in which a fire might take place; that the proposed changes in the building are not safe and constitute a fire hazard; that the Chief of the Bureau of Fire Prevention and Public Safety did not refuse to approve the plans on the sole ground that the building was not detached at least 50 feet from any other building or structure, but, also, refused to approve the plans because the proposed benzine building was not safe and would constitute a fire hazard.

Taking the view we do of the case, it is only necessary here to consider (1) whether we have jurisdiction of such an appeal from an interlocutory order, and (2) whether the dry-cleaning ordinance is invalid as unreasonable, or unconstitutional, or both.

(1)   It is urged for the complainant that the record does not show that the appeal which was taken is from an interlocutory order granting an injunction, or enlarging the scope of an injunction. The record shows that the order appealed from was that of May 11, 1925. It is true that two prior restraining orders had been entered, but they had expired and were *functus officio*. It will be seen, therefore, that the order of May 11, 1925, which ordered that an injunction theretofore issued—which had expired—be and remain in full force and effect, constituted such an interlocutory order as comes within the provisions

300    APPELLATE COURTS OF ILLINOIS.

Klever Shampay Karpet Kleaners v. Chicago, 238 Ill. App. 291.

of section 123 of the Practice Act [Cahill's St. ch. 110, ¶ 122].

The appeal having been taken, therefore, from an interlocutory order granting an injunction, and as it is contended that a constitutional question is involved, has this court jurisdiction? For the city it is urged that as this is an appeal from an interlocutory order, and is authorized without limitation by section 123, this court has jurisdiction, and especially as there is no provision for appeal from such an interlocutory order to the Supreme Court.

There is a seeming conflict between sections 123 and 118 of the Practice Act [Cahill's St. ch. 110, ¶¶ 122, 118]. The latter purports to exclude appeals to this court in all cases where a constitutional question is involved. In article VI, sec. 11 of the Constitution, it is provided that an Appellate Court may be created which shall have jurisdiction of such appeals and writs of error "as the General Assembly may provide may be prosecuted from circuit and other courts," and, further, that from said Appellate Court "appeals and writs of error shall lie to the Supreme Court, in all criminal cases, and cases in which a franchise or freehold or the validity of a statute is involved, and in such other cases as may be provided by law."

In the act of 1877, which created the Appellate Courts as provided for in the Constitution—ch. 37, ¶ 40, Cahill's St. 1925—jurisdiction was withheld from the Appellate Courts in appeals or writs of error from "final judgments, orders or decrees" in "criminal cases, not misdemeanors, and cases involving a franchise or freehold, or the validity of a statute." That reservation or limitation was made not by the Constitution itself, but by the Legislature which under the Constitution had authority to limit the jurisdiction of those courts.

Later, in 1887—chapter 110, ¶ 122, Cahill's St.

1925—it was provided by an act of the Legislature that "whenever an interlocutory order or decree is entered in any suit pending in any court in this State, granting an injunction, or overruling a motion to dissolve the same, or enlarging the scope of an injunction order  *   *   *   an appeal may be taken from such interlocutory order or decree to the Appellate Court.''

Before that time it was the law in this State that appeals could not be taken from interlocutory orders or decrees. *Gage v. Eich,* 56 Ill. 297; *Hunter v. Hunter,* 100 Ill. 519. In construing the act of 1887—chapter 110, sec. 123, *supra*—this court, in *Hill v. Tarbel,* 91 Ill. App. 272, said, "By the terms of the act, jurisdiction of such interlocutory appeals was conferred upon the Appellate Court 'in any suit pending in any court' whether involving a freehold or otherwise,'' and that seems to be the law of this State today. *Craig v. Craig,* 246 Ill. 449; *Mobile & O. R. R. Co. v. Fraser,* 169 Ill. App. 210; *The People v. Sears,* 230 Ill. App. 484. In the latter case, which involved a matter of revenue, the court said: ''The language of this section (section 123) is as broad and comprehensive as it is possible to employ. No class of cases is excluded. It includes all interlocutory orders which may be entered in any case, no matter whether an appeal from a final order in such a case would go to the Supreme Court or to the Appellate Court, and as there is no constitutional limitation on the power of the General Assembly to confer such jurisdiction, we see no reason why the language employed should be limited so as to exclude cases in which the revenue is involved.''

It is true that the two cases of *Patterson v. Denton,* 201 Ill. App. 382 and *Birch v. Denton,* 201 Ill. App. 386, are to the contrary, but as the court said in the *Sears* case, *supra,* they are against the weight of authority in this State. It is our judgment, therefore,

302    APPELLATE COURTS OF ILLINOIS.

Klever Shampay Karpet Kleaners v. Chicago, 238 Ill. App. 291.

that even though a constitutional question is involved, this court has jurisdiction of the appeal from the interlocutory order of May 11, 1925.

(2)   Is the dry-cleaners' ordinance an unreasonable regulation, and, so, invalid, and is it as a whole unconstitutional? In *Fishbain v. City of Chicago,* 237 Ill. App. 631, it was held that the city had power to enact reasonable regulations in regard to the dry-cleaning business; that in passing the ordinance in question it was the intention of the City Council that it should be given effect without section 1416; and that, therefore, as the bill of complaint did not allege that the whole ordinance in question was invalid, the complainant had an adequate and complete remedy at law, and the injunction should not have been granted.

The chief objection to the ordinance is made concerning part of paragraph (b) of section 1416, which provides as follows: "Every such building shall be detached and at least 50 feet from any other building or structure or to the line of adjoining property which may be built upon; provided, however, that the use of any building in which a dry cleaning business was carried on prior to July 22, 1912, may be continued where such building is separated from all other buildings by a fire wall, with no openings into any adjoining building; and further provided, that any building previously used for dry cleaning but not so occupied or used for such purposes for a period of three consecutive months immediately prior to the passage of this ordinance, shall not again be used for the business of dry cleaning unless all requirements governing new buildings or dry cleaning plants have been complied with."

In our judgment, the restriction provided for in that paragraph in regard to the dry-cleaning building being detached from other buildings or apart from adjoining property at least 50 feet is an unreasonable

regulation, and therefore, invalid, and is also unconstitutional. Article II, of sec. 2 of the Constitution (Bill of Rights) provides that "No person shall be deprived of * * * property without due process of law," and section 13 provides that: "Private property shall not be taken or damaged for public use without just compensation." The theory of the defendants is that the 50-foot restriction in question constitutes a proper exercise of the police power and is not a taking of private property without due process of law. There is no doubt but that the city has authority, reasonably, to regulate the dry-cleaning business in the city of Chicago. The ordinance itself provides that the drying room shall be of fireproof construction, that the walls of the dry-cleaning building shall not be less than 12 inches thick. Those provisions are in addition to the requirements that "every such building shall be detached and at least 50 feet from any other building or structure or to the line of adjoining property which may be built upon." It will be seen that not only is the building itself required to be fireproof, which is a proper regulation, but it must stand alone and apart from other structures at a minimum of 50 feet. Is that requirement illegal?

In *City of Chicago v. Mandel Bros.*, 264 Ill. 206, where an ordinance was considered which provided that not more than one floor of a basement should be used for the retail sale of goods, the court said:

"It is argued that council gave no consideration to the fact that a basement may be made as safe as any floor above the street. This is a question with which the city council had to deal. It is a legislative question, which must be left to the judgment and discretion of the legislative department, and unless the exercise of such judgment and discretion is manifestly unreasonable the courts will not interfere with it. It is not for a court to say that in its judgment the requirements of an ordinance enacted for the promotion of the public safety are too stringent, provided they

are adapted to the object sought and are not manifestly unreasonable. No doubt the council took into consideration the different conditions in the basement and upper floors in regard to fires, the relative danger from explosion, smoke, darkness, water and falling debris. We cannot say that the difference in conditions is not such as to justify the prohibition complained of in this ordinance.''

In *City of Chicago v. Washingtonian Home,* 289 Ill. 206, the court said: ''Unreasonable regulations for the protection of the lives and the safety of citizens, as well as of property against destruction by fire, are within the powers delegated to the city, and which may be exercised by it.'' And, further, ''Any regulation which tends to lessen the damage or danger of fires and prevent the spreading thereof in densely populated districts, is one which tends toward the protection of life and property of the public, and is, therefore, unless oppressive and unreasonable, a proper exercise of police power.'' In that case, the court held that an ordinance which provided that a sprinkler apparatus should be installed in certain classes of buildings was valid.

The requirements of the ordinance must be ''adapted to the object sought'' and ''not manifestly unreasonable''; and must not be ''oppressive and unreasonable.''

Can it reasonably be said that the 50-foot restriction in question, when applied, does not practically take away the user of a large area—here with 100 feet of frontage—of the property upon which the complainant desires to establish a dry-cleaning business? Quite obviously it does. Is there then a justification under the police power for such a drastic regulation? We think there is not. Police power means ''the power of promoting the public welfare by restraining and regulating the use of liberty and property.'' Freund on Police Power, p. 1.

In *City of Chicago v. Jackson,* 196 Ill. 496, the

court quotes with approval the following from Dillon on Municipal Corporations:

"Rights of property cannot be invaded under the guise of the police power. All embracing and penetrating as the police power of the State is and of necessity must be, it is, nevertheless, subject, like all other legislative power, to the paramount authority of the State and the Federal Constitution. A right conferred or protected by the Constitution cannot be overthrown or impaired by any authority derived from the police power."

In that case, the court said:

"It is undoubtedly true that the State, through the legislature, has the right to determine what shall be a reasonable exercise of the power, and so the municipal corporation, through its delegated power, may do so, but it cannot arbitrarily attribute the doing of a thing to the police power, whether reasonably done or not. It is a question finally for the courts to determine whether an act is within the police power."

It has been held—*Frazer v. City of Chicago,* 186 Ill. 480—that the police power may extend to the destruction of private property without compensation in order to prevent the advance of an invading army, or the spread of conflagration, and the reason given is urgent public safety. In the instant case, the situation is not of that character. If appropriate fire prevention, without depriving the user of a large area of the property, can be accomplished by regulation and requirements which, when conformed to, sufficiently avoid the prospective danger, then obviously the property ought not to be restricted as the ordinance provides, but should be left to the owner to use. A restriction or provision which renders real estate permanently unproductive takes away from the owner the constitutional protection of his property rights. An owner may be bound to conform to reasonable regulations, but only those which leave him a substantial user of his property. Here the restriction seems disproportionate to the danger.

It is true, considering the inflammability and combustibility of various materials used in the dry-cleaning business, that quite drastic requirements may be provided for, but it does not follow that in doing so it is reasonable to compel an owner, contemplating going into that business, to sacrifice or give up for the public welfare such substantial property interests as the 50-foot provision here requires, when there must be other methods such as fire walls, forms of exits and entrances, fireproofing, fire extinguishing apparatus, and other scientific precautions which would reasonably and sufficiently make for safety without, what the provision here in question entails, substantial confiscation of private property rights without compensation.

In our judgment, the provision in question constitutes an unreasonable and oppressive regulation and is, therefore, invalid, and it is unconstitutional as depriving the owner of property without due process of law and without compensation.

The question then remains, whether the ordinance may be considered as valid, even if the paragraph providing for the restriction of 50 feet be considered as invalid and as unconstitutional. In the view we take of the ordinance, it contains, apart from the paragraph requiring the 50-foot restriction, provisions regulating the business of dry-cleaning, which constitute in and by themselves a complete and workable fire prevention plan. It would be superfluous to set forth here even a summary of its contents. The ordinance is quite elaborate and exhaustive, and passed for the public welfare, and, in our judgment, must be considered valid and in force, save as to the above recited paragraph. *People v. Chicago Rys. Co.,* 270 Ill. 278.

It follows, therefore, that as the ordinance is valid, with the paragraph in question eliminated, as we think it is, the complainant, under the present rigorous rules of procedure, was bound to pursue his remedy by a

petition for a writ of mandamus, where either party is entitled to a jury—*Wilke v. City of Chicago,* 212 Ill. App. 414—and was not entitled to go into equity. *Grace Missionary Church v. City of Zion,* 300 Ill. 513; *Hamilton v. City of Chicago,* 227 Ill. App. 291; *Klinesmith v. Harrison,* 18 Ill. App. 467; *City of Chicago v. O'Hara,* 124 Ill. App. 290.

It is further contended that as there are seventy-five or eighty dry cleaners similarly situated, that have not complied with the 50-foot requirement, some of whom have been sued and others threatened with suit, jurisdiction should be taken by a court of equity to prevent a multiplicity of suits. In our opinion, this contention is untenable for several reasons. In the first place, it is apparent from the allegations contained in the complainant's bill that the other parties engaged in a similar line of business are not by any means similarly situated, either with the complainant or with each other. Complainant's allegation on this point is that "some of said dry cleaners are now operating benzine rooms," without complying with the ordinance and accordingly have been and are threatened with prosecution by the city and its officers; that actions have already been instituted against some of the said dry cleaners, for alleged violations of the said ordinance—though in what respect is not specified— "and they have otherwise become involved in litigation with said city, concerning the enforcement of said ordinance,"—again it is not specified in what respect; that other dry cleaners have been threatened "with such prosecution or litigation by the city"; that many other dry cleaners in the city who have complied with the ordinance are desirous of operating benzine rooms in connection with their establishments but are prevented from doing so by reason of the fact that the city insists upon enforcing the 50-foot requirement of the ordinance. In the next place, the city alleges, in the answer filed by it in the case at bar, that the Fire

Prevention Bureau refused to approve the plans submitted by the complainant for a number of reasons, specifying them. Some of its reasons were covered by the provisions of the ordinance in question here and some of them were entirely apart from the provisions of that ordinance. Thus it will be seen that the issues made by the pleadings in this case are such as to necessitate an examination into all the facts surrounding the complainant's own property and plant, and it would not at all follow that a decision affecting complainant's situation would mean that the situations presented by the circumstances surrounding the plants of these other dry cleaners should or could be treated similarly. *City of Chicago v. Collins*, 175 Ill. 445; *City of Chicago v. Chicago City Ry. Co.*, 222 Ill. 560; *Clark Teachers' Agency v. City of Chicago*, 220 Ill. App. 319.

For the reasons we have given, the order of the chancellor will be reversed.

*Reversed.*

THOMSON, P. J., and O'CONNOR, J., concur.