Frank L. Webb, as Receiver of Depositors State Bank, Appellee, v. Charles L. Marozas et al., Defendants. Appeal of Mary Dervinski, Appellant.

Gen. No. 36,143.

in the second division of this court for the first district. Opinion filed November 22, 1932.

HAROLD O. MULKS, for appellant.

ALTHEIMER, MAYER, WOODS & SMITH, for appellee; WILLIAM F. STRUCKMANN and HERMAN A. KABAKER, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal by Mary Dervinski (also known as Mary Darwin), one of the defendants to complainant's verified bill to foreclose a first mortgage trust deed on certain improved premises in Chicago, Illinois, from an interlocutory order of the superior court, entered April 13, 1932, appointing D. W. Cahill as receiver of the premises.

In complainant's bill, filed March 25, 1932, he alleges that "on February 9, 1932, Oscar Nelson, Auditor of Public Accounts of the State of Illinois, appointed your orator as Receiver of Depositors State Bank, an Illinois banking corporation; that thereafter your orator qualified as such receiver by accepting the appointment and filing his bond, and now is . . . the duly qualified and acting receiver of said bank; and that among the assets of said bank in his hands as such receiver are certain securities hereinafter more fully described." Then follow allegations in substance that on September 8, 1930, Charles L. Marozas and wife, being justly indebted in the sum of $30,000, executed and delivered their 45 principal notes payable to bearer,—15 of which are for $1,000 each and payable on September 8, 1933, and 30 of which are for $500 each and payable on the same day, and all bearing interest at six per cent per annum, payable semiannually, and which instalments of interest are evidenced by attached coupon or interest notes; that on September 8, 1930, to secure the payment of all the notes, Marozas and wife executed, acknowledged and delivered their trust deed, conveying the premises in question to the Chicago Title & Trust Co., as trustee,

which trust deed was duly recorded on December 4, 1930 (copies of the notes and trust deed are attached and made a part of the bill); that in and by the trust deed the grantors covenanted and agreed *inter alia* to pay the indebtedness and interest as evidenced by the notes, to pay all taxes and assessments levied on the premises, and to keep the building insured against fire, etc.; that it is further provided in the trust deed that in case of default for three days in the payment of any note or any instalment either of principal or interest, or in case there is a breach of any of their covenants or agreements contained in the trust deed, then the whole of the principal indebtedness, at the option of the legal holder of the principal notes, shall become immediately due and payable without notice, and thereupon said holder shall have the right to immediately foreclose the trust deed; that in and by the trust deed the grantors waive all right to the possession of the premises and the income therefrom, pending such foreclosure proceedings, and agree that "upon the filing of any bill to foreclose said trust deed a receiver shall, upon motion of solicitors for complainant, without notice, be immediately appointed by the court to take possession of said premises and collect the rents, issues and profits therefrom during the pendency of such foreclosure suit," etc., and further agree that all expenses and disbursements paid or incurred in behalf of the complainant in connection with said foreclosure, including reasonable solicitor's fees, stenographer's fees, etc., shall become so much additional indebtedness secured by the trust deed and shall be allowed in any decree foreclosing the same; that complainant "as Receiver as aforesaid," is now the legal holder and owner of *all* of said notes; that on March 8, 1931, the semiannual instalment of interest, aggregating $900, on all of the principal notes became due, that only the sum of $300 was paid, leaving a bal-

ance of interest unpaid of $600, and that such default in the payment of said interest has continued ever since March 8, 1931; that on September 8, 1931, another semiannual instalment of interest, aggregating $900, became due and was not paid, and that such default has continued ever since; that on March 8, 1932, another semiannual instalment of interest, aggregating $900, became due and was not paid, and that such default has continued ever since; that complainant "has elected to declare," and by the filing of this bill "does declare," the entire principal indebtedness secured by said trust deed to be immediately due and payable; that the general taxes for the year 1928, levied and assessed against the premises, amounting to $586.23, together with penalties and costs, remain unpaid; that the general taxes for the years 1929 and 1930, levied and assessed against the premises, have not been paid, and that the general taxes for the year 1931 are now a lien against the premises; that they are improved with a one-story brick garage building and sales room and with a gas station, and are commonly known as 1449–1459 West 51st street, and 5105–5113 South Laflin street, Chicago; that "owing to the prevailing general depression of business, the value of said real estate has greatly depreciated, and that upon a judicial sale the premises will not bring sufficient to pay the indebtedness secured by said trust deed, together with the unpaid taxes and the taxes which are now a lien thereon and the costs and expenses of this proceeding"; that the premises "are meagre and scant security" for the indebtedness, and that their value "does not exceed the sum of $20,000"; that the defendant, Mary Dervinski, "is the record holder of the equity of redemption of said real estate"; that the Chicago Title & Trust Co. is also the trustee under another trust deed on the premises made by said Mary Dervinski, a widow, dated December 15, 1930, and recorded

on February 10, 1931; and that there are other claimed incumbrances on the premises and other persons (naming them) who have or claim some interests in the premises, but such interests, if any, are subordinate to the lien of the trust deed herein sought to be foreclosed. The bill prayed for a foreclosure and for the appointment of a receiver *pendente lite,* etc.

On April 9, 1932, Mary, Dervinski entered her appearance. On the same day, after due notice to her, complainant's motion for the appointment of a receiver of the premises *pendente lite* was continued to April 13, 1932, on which day she filed a general demurrer to complainant's bill. On April 13, 1932, also, there was a hearing on complainant's motion for the appointment of a receiver. It does not appear that any affidavits were presented to the court by Mary Dervinski or any other party, or that any evidence was introduced upon the hearing. By her demurrer Mary Dervinski admitted all the well pleaded facts alleged in the bill. At the conclusion of the hearing the court entered the interlocutory order appealed from. In the order, set out in full in the transcript, the court finds "that the makers of the trust deed, sought to be foreclosed herein, *pledged the rents,* issues and profits from said real estate as security for the indebtedness described therein, and *waived all right* to the possession of and income from said premises pending foreclosure proceedings until the period of redemption expired, *and agreed* upon the filing of a bill to foreclose said trust deed that a receiver might be appointed by the court with the usual powers of a receiver in chancery to have immediate possession of and to operate and lease said premises, and to collect the rents therefrom during the pendency of said suit and during the statutory time of redemption from foreclosure sale; that default has been made in the payments provided for in the trust deed; that the value of

the real estate in the trust deed *is less than the amount of indebtedness secured thereby;* and that complainant is entitled to the appointment of a receiver." And the court ordered:

"That D. W. Cahill be and he is hereby appointed receiver of the premises (describing them), with the usual powers incident to receivers in chancery, together with the following powers: To carry on all legal proceedings necessary for the protection of said premises, including any proceeding necessary to acquire possession of the whole or any part thereof, to employ counsel, to institute and prosecute suits for rent now due or hereafter to become due, and to lease said premises on the best terms obtainable.

"That defendants attorn to said receiver, and that all persons in possession pay rent to him for the premises occupied by them.

"That complainant file his complainant's bond herein in the sum of $1,000, and that the receiver file a receiver's bond herein in the sum of $3,000, within — days from the date hereof."

The transcript further discloses that on April 18, 1932, on presentation of the receiver's bond, the court ordered that "the bond of D. W. Cahill, as receiver herein, in the sum of $3,000, be and the same is hereby approved"; that on April 22, 1932, on presentation of complainant's bond and upon his motion, the court ordered that "leave be granted to Frank L. Webb, as receiver of Depositors State Bank, complainant herein, to file *instanter* his complainant's bond," and that such "complainant's bond, with Frank L. Webb, not individually but as receiver of Depositors State Bank, as principal, and Fidelity & Deposit Company of Maryland, as surety, in the sum of $1,000, be and the same is hereby approved"; and that on May 10, 1932, within apt time, appellant perfected the present appeal in the superior court by the filing of her appeal bond in the

sum of $250 with the clerk of said superior court, which bond was approved by said clerk, as provided in section 123 of the Practice Act, Cahill's St. ch. 110, ¶ 122. The appeal subsequently was perfected within apt time in this court.

The main contention of appellant's counsel, relied upon for a reversal of the order appointing a receiver *pendente lite* of the premises, is in substance that that portion of section 11 of the Illinois Banking Act, Cahill's St. ch. 16a, ¶ 11, which attempts to confer upon the State auditor power and authority to appoint receivers of Illinois banks, is in violation of Article III of the Constitution of Illinois, and void, for the reason that said portion of the section attempts to confer *judicial* powers upon an administrative officer (the State auditor); that the alleged appointment by the State auditor of complainant as receiver of the Depositors State Bank on February 9, 1932, therefore, was void and of no legal effect; and that complainant, as the receiver of said bank, was without legal power or authority to institute the present foreclosure proceeding. As the present appeal is one from an interlocutory order appointing a receiver and one authorized solely by virtue of section 123 of the Practice Act, Cahill's St. ch. 110, ¶ 122, and as it is provided in that section that "no appeal shall lie or writ of error be prosecuted from the order entered by said Appellate Court on any such appeal" (see *Craig v. Craig,* 246 Ill. 449, 450), we are of the opinion that this court has jurisdiction to consider and pass upon the question raised by counsel on this appeal. (*Bistor v. McDonough,* 262 Ill. App. 404, 406; *Klever Shampay Karpet Kleaners v. Chicago,* 238 Ill. App. 291, 300–302; *People v. Sears,* 230 Ill. App. 484, 488–490; *Mobile & Ohio R. Co. v. Fraser,* 169 Ill. App. 210, 214; *New Ohio Washed Coal Co. v. Coal Belt Ry. Co.,* 116 Ill. App. 153, 154.)

In Article III of the Constitution of Illinois it is provided:

"The powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial, and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

In section 11 of the Illinois Banking Act, as amended in 1923 and now in force (Cahill's St. 1931, ch. 16a, ¶ 11, p. 170) it is provided in part:

". . . If the capital stock of said bank shall remain impaired for sixty days after such notice by the Auditor, or, if it appears from the reports made to the Auditor under this Act, or from any examination made by or on behalf of the Auditor, that the conditions of any bank organized under this Act are such that the impairment of the capital stock cannot be made good, or if, in the opinion of the Auditor, it is operating with an insufficient portion of its assets in cash or readily convertible securities, or that the business of any such bank is being conducted in an illegal, fraudulent or unsafe manner, he may, in his discretion, without having taken the steps provided in this section to make good the impaired capital stock, forthwith, for the purpose of reorganization or liquidation through receivership, take possession and control of the banking house, furniture and fixtures, books, records and assets of every description, of such bank. If the Auditor determines that the bank cannot be reorganized and that the same should be liquidated through receivership he *shall appoint a receiver,* and require of him such bond and security as he deems proper. Such receiver, under the direction of the Auditor, shall take possession of, and for the purpose of the receivership, the title to, the books, records and assets of every description of such bank, and shall *proceed to collect all debts,* dues and claims belonging to it, and, upon the order of a court of record of the county in

which said bank is located, may sell or compound all bad or doubtful debts, and on a like order may sell all the real and personal property of such bank, on such terms as the court shall direct. . . .

"Such receiver shall have authority *to sue* and defend *in his own name* with respect to the affairs, assets, claims, *debts and choses in action of such bank.* . . . He shall have the power and authority . . . to do such other things and take such other steps from time to time under the direction and approval of the Auditor as may reasonably appear to be necessary to conserve the trust estate and secure the best interests of the creditors of said bank. . . . "

In the present foreclosure proceeding it will be noticed that there are two receivers,—the complainant, Frank L. Webb, as receiver of the Depositors State Bank, appointed as such by the State auditor under a *statute* (section 11 of the Banking Act), and D. W. Cahill as receiver *pendente lite* of certain improved real estate, appointed by the superior court on the application of Webb as receiver of said bank. Webb as such receiver is not an officer of the court but is a party litigant. Cahill, as receiver, is an officer of the court, and it is his duty to conserve, not the property of the bank generally, but only that property of appellant which Webb, as receiver, has brought into court for conservation and for the enforcement of the lien thereon of a trust deed. Webb may conveniently be called the *statutory* receiver and Cahill the receiver *pendente lite.* In *United States Trust Co. v. New York W. S. & B. Ry. Co.,* 101 N. Y. 478, 483, it is said:

"The power of a Court of Chancery to appoint a receiver *pendente lite* in foreclosure cases, is a part of its incidental jurisdiction, not depending upon any statute, and which it exercises, whenever by reason of the insufficiency of the security, or other reason, equity requires that the rents and profits of the mort-

gaged property, pending the litigation, should be impounded and retained, to be applied upon the debt, to be ascertained by the final judgment.''

In *Decker v. Gardner,* 124 N. Y. 334, the court discusses the law in relation to receivers of *corporations* and draws a distinction between such receivers and receivers *pendente lite* as follows (pp. 337, 338, italics ours):

''Jurisdiction to appoint receivers of *corporations* is *wholly statutory.* The power to declare a forfeiture of corporate franchises was originally in England vested in the courts of law, and was exercised in a proceeding brought by the attorney-general in the name of the sovereign. The Court of Chancery never assumed jurisdiction in such cases until it was conferred by act of parliament. It declined until the power was conferred by statute to sequestrate corporate property through the medium of a receiver, or to dissolve corporate bodies, or to restrain the usurpation of corporate powers. (Citing cases.) The courts of this country followed the English system. (Citing cases.) And the jurisdiction in such cases is now a subject of statutory regulation in most if not all of the States.

''In 1825 the legislature of this State authorized the Court of Chancery to sequestrate the property of corporations against whom judgment at law had been obtained and execution was returned unsatisfied, and to appoint receivers of the same, and to decree the dissolution thereof in cases of insolvency. . . . The receivers authorized by statute to be appointed upon the dissolution of the corporation are the representatives of the corporate body, and generally are vested ·with the title to the corporate property, and, for the purpose of administering thereon and winding up the affairs of the corporation, succeed to its powers and franchises. In this State they are vested with all the

real and personal estate of the corporation, and are made trustees of such estate for the benefit of the creditors and stockholders, and possess generally all the powers and authority conferred by law upon the assignees of insolvent debtors.

"Receivers appointed *pendente lite* are, however, mere temporary officers of the court, and do not possess the powers of a permanent receiver unless specially conferred upon them by order of the court. . . . The Court of Chancery, however, possessed and exercised in many cases the power to appoint receivers *pendente lite* of property which was the subject matter of litigation before the court. Such receivers possessed no legal powers. They were officers of the court merely, and their functions were limited to the care and preservation of the property committed to their charge, and they possessed no authority except such as the orders of the court conferred. . . . This power of appointment of a receiver *pendente lite* was one incidental to the jurisdiction of the court. *It did not depend upon statute,* and was not affected by the character of the parties before it, whether an individual or a corporation, or by the nature of the property."

In High on Receivers, 4th Ed., sec. 39, it is said (p. 52, italics ours):

"It has been held that the appointment of a receiver *is not necessarily a judicial act* in all cases, in the sense that it must be made only by the courts. And the right of the legislature of a state to enact a law, authorizing the governor of the state to appoint a receiver of an insolvent banking corporation, *is not a violation of the constitutional provision* limiting each department of the government to its own particular sphere; the appointment of a receiver under such law being in no manner a decree or judgment affecting title to property, and not being a final determination of any rights, either legal or equitable."

In *Carey v. Giles,* 9 Ga. 253, the governor of the State of Georgia had appointed a receiver of an insolvent bank, as he was authorized to do under a statute of the State. It was contended in substance that said statute was unconstitutional and invalid because it conferred upon the governor judicial powers. In deciding the contention in the negative the court said (p. 256):

"Was the appointment of a receiver a judicial act? If so, it is very clear that it could not be made by the Legislature, without violating an express provision of the Constitution. But it does not seem to us to be of this description of power. It was not a case of controversy between party and party; nor is there any decree or judgment affecting the title to property; it determines no right, legal or equitable. The receiver is merely to collect, hold and disburse the assets of the bank for the benefit of all concerned; and it is in the power of the Courts to direct and control him in the proper execution of his duties."

A similar decision was made in *Jeffries v. Bacastow,* 90 Kan. 495, where it appeared that the bank commissioner of the State had appointed a receiver for an insolvent State bank under a State statute and it was contended that the statute was unconstitutional and invalid. In denying the contention the court said (pp. 497, 498):

"The argument is that the appointment of a receiver is a judicial act to be performed by a court of equity, and that it cannot be performed by an executive officer, like the bank commissioner, under a government framed like ours upon the theory of a separation of powers. This argument is built entirely upon a name. The person spoken of as 'receiver' might just as well have been called a special deputy bank commissioner. . . . The fact of insolvency having been discovered, the statute directs the bank commissioner's

course, and the designation by him of a person to wind up the affairs of the bank is no more a judicial act than his order to the board of directors to remove a dishonest cashier. His powers are purely administrative and in no way infringe upon the ancient authority of courts to determine rights of person and property in specific controversies pending before them.''

We are not advised that our Supreme Court has decided the precise question herein raised by appellant's counsel. But there are other cases in still other jurisdictions in which decisions have been rendered similar to those in the authorities above cited. (See *Bushnell v. Leland,* 164 U. S. 684, 685; *Cosmopolitan Trust Co. v. Mitchell,* 242 Mass. 95, 113, 117; *LaMonte v. Lurich,* 86 N. J. Eq. 26, 27.) We are therefore of the opinion that there is no substantial merit in counsel's main contention, as above set forth. And, even if portions of section 11 of the Illinois Banking Act might be considered as in violation of Article III of the Constitution of Illinois, we do not think that appellant is in any position to raise the point as it is a mere collateral attack upon the title to the office of at least a *de facto* officer. (See *Leach v. People,* 122 Ill. 420, 427–431.)

Counsel for appellant also urges several technical points as grounds for a reversal of the order of April 13, 1932, appealed from. One is that the transcript does not affirmatively show that the complainant's bond of $1,000, provided for in the order, was actually filed or given. In the order complainant was directed to file a complainant's bond of $1,000, and the receiver (Cahill) a receiver's bond of $3,000. In the order of April 18, the presented receiver's bond in the sum of $3,000 was approved. In the order of April 22, the presented complainant's bond in the sum of $1,000 was approved. If such bond was not in fact filed or given, appellant or other interested parties should have called the court's attention to the fact.

And it is not improper for the court to appoint a receiver, conditioned upon complainant and the receiver filing the required bonds at a future day. (See *Reliance Bank & Trust Co. v. Dalsey*, 263 Ill. App. 546, 553.)

Other contentions are that the order appealed from should be reversed (1) because of claimed defects in the bill in that (a) it does not specifically allege that the State auditor directed complainant to commence the present foreclosure proceeding; (b) does not sufficiently allege how complainant's appointment, as receiver of the bank, was made and whether in writing and under the bond and seal of the auditor; (c) does not properly set forth the bond which complainant, as receiver of the bank, gave to the auditor when the latter appointed him as such receiver; and (2) because before entering said order the court did not pass upon appellant's general demurrer to complainant's bill, which demurrer was filed on the same day said order was entered. We find no substantial merit in any of these contentions, warranting a reversal of the order.

Our conclusion is that the interlocutory order appealed from, appointing D. W. Cahill, as receiver of the premises in question, should be and it is affirmed.

*Affirmed.*

KERNER, P. J., and SCANLAN, J., concur.