(No. 41416.–

THE PEOPLE *ex rel.* Joseph E. Knight, Petitioner, *vs.* DONALD J. O'BRIEN, Judge, Respondent.

*Opinion filed July 11, 1969.—Modified on motion Sept. 20, 1968.*

KLUCZYNSKI, J., dissenting.

ALBERT E. JENNER, JR., of Chicago, (PHILIP W. TONE, THOMAS W. MCNAMARA, SIDNEY G. SALTZ, and RAYMOND, MAYER, JENNER & BLOCK, of counsel,) for petitioner.

KIRKLAND, ELLIS, HODSON, CHAFFETZ & MASTERS, DON H. REUBEN, LAWRENCE GUNNELS, and MICHAEL W. COFFIELD, all of Chicago, for respondent.

PER CURIAM: Joseph E. Knight, statutory receiver for liquidation of Apollo Savings & Loan Association, has filed this original petition for writ of *mandamus* to require the respondent, the Honorable Donald J. O'Brien, Judge of the Circuit Court of Cook County, to authorize certain transactions respecting the receivership properties, presented to that court by Albert E. Jenner, Jr., as counsel retained by the receiver.

The essential issue presented by the petition for writ of *mandamus* is whether a receiver, appointed by the Commissioner of Savings and Loan Associations, pursuant to the Illinois Savings and Loan Act, to liquidate such an association, has authority to select legal counsel in connection with the discharge of his statutory duties, or whether the selection and appointment of the receiver's counsel rests exclusively with the circuit court.

The facts are not in dispute. On April 26, 1968, pursuant to the Illinois Savings and Loan Act (Ill. Rev. Stat. 1967, chap. 32, par. 921), hereinafter referred to as the Act, the Commissioner of Savings and Loan Associations, Justin Hulman, appointed Joseph E. Knight as statutory receiver, to take custody of and to liquidate Apollo Savings. On the same day, the statutory receiver, with the approval of Commissioner Hulman, retained Albert E. Jenner, Jr., as attorney for the receiver.

On May 2, 1968, the Attorney General, at the request of Commissioner Hulman, as provided in section 10—2 of the Act, filed a statutory complaint for the liquidation and dissolution of Apollo Savings, and for an injunction against its officers and directors, enjoining its continued operation.

On May 3, 1968, the Honorable Donald J. O'Brien, to whom the cause was assigned, entered a decree ordering the liquidation of Apollo Savings, and directing that the receiver, Joseph E. Knight, take custody and control of its assets and records for the purpose of liquidating the Association. The decree also authorized that an injunction

issue as requested, and provided that the court retain jurisdiction "for the purpose of granting such other and further relief * * * as said receiver * * * may require and in the judgment of the Court merit."

At that hearing, the respondent Judge commented—although the issue was not involved—that in his opinion neither the statutory receiver nor the Commissioner of Savings and Loan Associations had authority to choose and retain counsel for the receiver, inasmuch as that function was within the exclusive power of the court.

On May 14, 1968, Albert E. Jenner, Jr., as attorney for the receiver, presented to the respondent Judge a petition for authorization to complete two mortgage loans which Apollo Savings had committed itself to make prior to the receivership, alleging that such action was necessary to conserve the receivership estate, since the Chicago Title & Trust Company would not issue title guarantee policies to the receiver without court approval of the transactions.

The respondent Judge, however, refused to hear or determine that petition, or to even rule whether the petition was deemed filed, denied or dismissed, on the ground that Jenner had no authority to act as attorney for the statutory receiver, Joseph E. Knight, because Jenner had not been chosen by respondent.

Thereupon, the statutory receiver, Joseph E. Knight, by his attorney, Albert E. Jenner, Jr., filed in this court, a motion for leave to file a petition for writ of *mandamus* and for certain other relief in the interest of expediting a hearing on the merits of the *mandamus* petition at the May term. We granted the motion on May 22, 1968.

The petition for writ of *mandamus* sets forth the foregoing sequence of events. In addition, it recites the details and urgency of the two mortgage transactions involved in the petition presented on May 14, 1968, and the further facts that the receiver (referred to therein as "the relator") has numerous urgent legal problems in connection with the

receivership estate of over 21,000 separate accounts and assets in excess of $84,000,000, which require the day-to-day advice of counsel. A partial list describing some of the matters confronting the receivership and requiring legal services is enumerated in the affidavit of the receiver, which is attached to the petition for writ of *mandamus* along with other exhibits, including the transcript of the proceedings on May 14.

The petition for writ of *mandamus* also asserts that respondent's refusal to consider matters presented on behalf of the receiver by his attorney on the ground that the receiver, rather than the court, had chosen the attorney, constitutes a failure on the part of the respondent Judge to perform his judicial duties and an arbitrary interference with the conduct of the receivership. This interference with the discharge of the receiver's duties by depriving him of counsel of his own choosing and refusing to recognize his counsel, it is alleged, will also subject innocent third parties to undue hardship. That situation will continue until this court determines this *mandamus* proceeding.

The *mandamus* petition also alludes to similar conduct by another judge to whom the Lawn Savings & Loan Association receivership has been assigned, and asserts that the refusal by that judge to recognize relator's choice of counsel impairs relator's discharge of his duties as statutory receiver of that association.

The petition thereupon requests this court to issue its writ of *mandamus* directing the respondent, the Honorable Donald J. O'Brien, as judge of the circuit court, to hear and determine, upon presentation by the attorney chosen and retained by the statutory receiver, not only the petition for authorization to complete certain mortgage loans, submitted on May 14, 1968, but all other matters presented on his behalf by such counsel as the receiver selects.

On June 10, 1968, the respondent, the Honorable Donald J. O'Brien, filed a motion to dismiss the petition for

writ of *mandamus,* on the grounds that his refusal to recognize the attorney appointed by the statutory receiver was in accordance with law, and that the Attorney General, rather than private counsel, should represent the receiver in savings and loan liquidations. On June 15, 1968, Joseph E. Knight, the receiver, filed suggestions in opposition to respondent's motion to dismiss the petition for writ of *mandamus.*

The determination of whether this court should issue the writ of *mandamus* depends upon whether the statutory receiver, operating under the Savings and Loan Act, has authority to select his own counsel, or whether the receiver must employ counsel appointed by the court or employ the Attorney General.

The receivership herein, involving the involuntary liquidation of a savings and loan association, is created by the Illinois Savings and Loan Act. That law is patterned after the Illinois Banking Act and the Insurance Liquidation Act of 1933, which have been deemed to create an executive or administrative receivership, as distinguished from a court created equity receivership. *People ex rel. Palmer* v. *Niehaus* (1934), 356 Ill. 104; *People ex rel. Palmer* v. *Peoria Life Ins. Co.* (1934), 357 Ill. 486, 491.

In the *Niehaus* case the court explained the distinction between such an administrative receivership and the equity receivership. (Pages 109, 110, 111.) Under the Insurance Liquidation Act, the administration of the affairs of an insolvent insurance company became vested "in an executive officer of the State rather than a receiver appointed by a court," and "the powers of the liquidating officer arose out of the statute and were in no sense created by virtue of any appointment of the court." The court pointed out that, contrary to the ordinary chancery receivership, the receiver under the Act had title to the assets of the insolvent company; that the "court cannot remove that officer or control his acts contrary to the statute"; that the court "acts only

within the scope defined" in the statute; and that the Act "gives the court no right to appoint a receiver but compels it to recognize and accept the receiver appointed by the Director of Insurance." The court emphasized that by the Insurance Liquidation Act and the Banking Act the legislature sought to "avoid difficulties and complications attending the appointment of receivers by courts," and that the statute "makes the receiver an executive or administrative officer and not a judicial officer."

The distinction between such an administrative receivership and the court-created equity receivership is established in the case law. *In re Casualty Co. of America* (1927), 244 N.Y. 443, 144 N.E. 735, 736; *Riches* v. *Hadlock* (Utah, 1932), 15 P.2d 283, 288; *People ex rel. Barrett* v. *Shurtleff* (1933), 353 Ill. 248; *People ex rel. Palmer* v. *Peoria Life Ins. Co.* (1934), 357 Ill. 486, 489; *Webb* v. *Marozas* (1932), 268 Ill. App. 338, 348.

In the ordinary equity receivership, the receiver is an officer of the court, appointed by the court, and he administers assets which are in the custody of the court; and his fees and those of his employees are set only by the court. Consequently, there is some reason and justification for the court to have the right to approve the equity receiver's selection of an attorney.

In contrast, under the administrative receivership created by the Illinois Savings and Loan Act (Ill. Rev. Stat. 1967, chap. 32, pars. 921-927), the receiver is not an officer of the court, nor appointed by the court. He is an executive officer, and must be appointed by the Commissioner of Savings and Loan Associations (chap. 32, par. 921). In fact, the Commissioner is in no way required to apply for court approval of the receiver he selects, and the court does not even have jurisdiction to substitute another receiver for the one appointed by the Commissioner. (*People ex rel. Barrett* v. *Shurtleff* (1933), 353 Ill. 248.) Moreover, the Act gives the receiver, and not the court, custody

and title to the assets of the receivership (chap. 32, par. 921), and the Act prescribes only limited functions for the court. Consequently, there can be no logical justification for the court having any part in the selection of the attorney for the receiver.

Quite the contrary, logic would dictate that an administrative receiver, who does not owe his appointment to the court, who is not a judicial officer, and who is administering assets that are in his custody and not in the court's custody, should have the right to choose his own attorney, upon whose advice he must rely to fulfill his duties and to protect himself from personal liability imposed by the Act.

Furthermore, the terms of the Act itself connote such an interpretation. Nowhere in the Act is authority conferred on the court to choose or appoint counsel or any other employee for the receiver. Nor can such authority be inferred from any of the court's enumerated functions. The only powers conferred on the court are to enjoin officers and directors from continuing operation of the Association; to order the receiver to proceed with the administration of the assets as enumerated in section 10—3 of the Act; and to rule on petitions relative to the marshalling and distribution of assets. Ill. Rev. Stat. 1967, chap. 32, pars. 923, 925, 926, 927.

At the same time, the Act does contemplate that the receiver will employ legal counsel, as well as the services of various other persons, to enable him to carry out his statutory duties. There is no more reason to single out the receiver's attorney and hold that the court must select him, or approve him, than to hold that the court must select the receiver's accountants, or any other persons whose services are required by the receiver and who can be paid out of the assets of the receivership estate.

It is argued on behalf of respondent, however, that after the receiver's initial appointment by the Commissioner of Savings and Loan Associations, the receiver is com-

pletely under the control and supervision of the chancery court to the same extent as though he were a court-appointed equity receiver, and, therefore, the receiver's counsel should be appointed by the court.

That argument obliterates the concept of an independent administrative receivership, and ignores and defeats the legislative intention to obviate the difficulties attending court appointed receiverships. *People ex rel. Palmer* v. *Niehaus* (1934), 356 Ill. 104, 109-110.

Respondent's argument, moreover, is without support in the case law. The supportive language in *People ex rel. Lowe,* v. *Marquette National Fire Ins. Co.,* 351 Ill. 516, relied upon by respondent, was specifically rejected in the *Niehaus* case, where the court stated at p. 111: "What was said with reference to a receiver of an insolvent insurance company being a judicial officer was not necessary to the decision and is not adhered to in this case."

In the *Niehaus* case a minority opinion which advanced respondent's contention that the receiver is subject to the court's jurisdiction and supervision to the same extent as in ordinary equity receiverships, was rejected in the majority opinion. It was held that the court was entitled to act only within the scope defined by the Act (p. 112): "It is clear, therefore, that while jurisdiction is conferred upon circuit courts to try claims against an insolvent insurance company and to pass upon the charges and allowances to be made out of the assets of such companies, yet this act *does not make a liquidating receiver* of an insolvent insurance company a *judicial officer.*" (Italics added.)

A similar interpretation of the limited and circumscribed role of the court in administrative receiverships under the Insurance Liquidation Act was presented in *People ex rel. Palmer* v. *Peoria Life Ins. Co.* (1934), 357 Ill. 486, 489-490. The court held that the court's powers are strictly limited to those expressly conferred by statute.

It is therefore our opinion that the legislative intention

to create an independent executive receivership under the court's jurisdiction and supervision, to the same extent as Savings and Loan Act, as well as the complete absence of any provision in the Act conferring power on the court to appoint either the receiver or any of the persons whose services he may require, all indicate that the receiver could properly select his own counsel. Hence, respondent's insistence on the right to appoint such counsel was in error.

Respondent's brief argues further that the statutory receiver must utilize the Attorney General as counsel, and that such representation would constitute a more economical procedure. That contention is without support in the law, and is unwarranted under the terms of the Act itself.

The only reference in the Savings and Loan Act to the Attorney General representing anyone is in section 10—2 (Ill. Rev. Stat. 1967, chap. 32, par. 922), which refers to the Attorney General representing the Commissioner and provides that the latter shall direct the Attorney General to file a complaint in the circuit court in the name of the Commissioner for the orderly liquidation or dissolution of the association.

The ensuing section 10—3, which defines the powers and duties of the receiver, including his duty to petition the court in connection with certain acts, contains no reference whatsoever that the receiver shall be represented by the Attorney General, or by any of his assistants in the performance of those court functions. In fact, such an implication is precluded by section 10—4, which authorizes the payment of solicitor's and attorney's fees from receivership assets. If representation by the Attorney General or his assistant were contemplated for the receiver, such an authorization of payment would be unnecessary, since the Attorney General and his staff are ordinarily paid from public funds.

Therefore, under the rules of statutory construction, the foregoing provisions and omissions all militate against re-

spondent's contention that the receiver was obliged to employ the Attorney General.

There is no reason to single out the savings and loan receivership as the only one in which the Attorney General represents the receiver. The Attorney General could logically act in bank receiverships and insurance company liquidations, as well; but obviously he has neither the staff nor appropriation to permit undertaking the minutiae of any of such receiverships.

Furthermore, under the Act establishing his office, the Attorney General is authorized to prosecute proceedings necessary in the execution of the duties of a State officer. A receiver appointed by the Commissioner of Savings and Loan Associations to liquidate a savings and loan association is not a State officer, since his position is temporary and limited to the affairs of a private corporation. More specifically, this court has held that an official acting as a liquidator of a regulated business need not, even if he is a State official, be represented by the Attorney General as his counsel. (*People ex rel. Lowe* v. *Marquette National Fire Ins. Co.* (1932), 351 Ill. 516, 527). In the *Marquette* case the court stated: "It has long been the rule under the common law that the Attorney General may not appear in cases in which the public generally is not interested. * * * It must follow that legal services rendered during the period and in the process of such liquidation have in them no element of public service but are for private benefit, only."

Respondent's further argument that representation by the Attorney General will be financially economical is in no way determinative. Even if true, that argument should properly be addressed to the legislature. The function of the court is to determine whether the Savings and Loan Act requires the receiver, either expressly or by implication, to be represented by the Attorney General. We find no authority for respondent's contention. ·

With respect to whether the writ of *mandamus* is a

proper remedy under the circumstances of the case, it is patent from exhibit G, the affidavit of the receiver containing a partial list of the matters confronting the receiver and requiring the services of counsel, that prompt action is essential to preserve the receivership assets. It would serve no useful purpose to enumerate all of these transactions. Inasmuch as this court has concluded that under the law the receiver is entitled to have counsel of his choice rather than counsel selected by the respondent, the court's refusal to even entertain the petition tendered by counsel appointed by the receiver and approved by the Commissioner, did exceed the authority of the court.

In view of the paucity of cases on the issue, and the dominant role exercised by courts in related equity receiverships, guardianships, and other similar appointments, it should be pointed out that the issue of respondent's authority to appoint counsel herein was not free from debate. Accordingly, the petitioner's characterization of respondent's action as a "failure * * * to perform his judicial duties and an arbitrary interference with the conduct of the receivership" was not well founded; the respondent was simply in error in his reading of the Savings and Loan Act, a statute that is not a model of clarity. Inasmuch as the issue has been resolved, and further delay would adversely affect the receivership estate, the writ of *mandamus* is issued as prayed for, and respondent is directed to rule on the petition authorizing the mortgage transactions, and such other matters as may be presented by counsel selected by the receiver.

*Writ awarded.*

Mr. JUSTICE KLUCZYNSKI, dissenting:

In my opinion, the issue to which this court must address itself is not whether the receiver "has authority to select legal counsel in connection with the discharge of his statutory duties, or whether the selection and appoint-

ment of the receiver's counsel rests exclusively with the circuit court." It is, rather, whether the receiver must, in the first instance, petition that court for leave to retain, and for approval of, his chosen counsel. It is true that the respondent judge informed the parties before him at the initial hearing on the liquidation that the power to choose and retain counsel rested with the court. It is also true, however, that respondent subsequently retracted this position, indicating to the parties that his refusal to recognize Mr. Jenner was based on the failure of the Commissioner or the receiver to submit a proper petition to the court for his appointment. It is within the context of this latter position of respondent, which he reasserts in this court, that the propriety of awarding a writ of *mandamus* should be adjudged.

It is undeniable that "[t]he receivership herein * * * is created by the Illinois Savings and Loan Act" (Ill. Rev. Stat. 1967, chap. 32, pars. 921 *et seq.*), that, as such, it is "an executive or administrative receivership, as distinguished from a court created equity receivership," and that therefore many of the traditional powers of a court of chancery, including the power to appoint the receiver, have been by statute explicitly reposited in a State official, in this case, the Commissioner of Savings and Loan Associations. (Chap. 32, par. 921.) However, this Act, unlike other acts involving similar legislative purposes (see Insurance Code, Ill. Rev. Stat. 1967, chap. 73, par. 814), makes no express provision for the appointment or approval of legal counsel and I cannot, like the majority, infer from its terms an absolute license for the receiver to appoint counsel without prior notification to and approval by the court. The Act authorizes the Commissioner to take custody of an association and, if involuntary liquidation is necessary, to appoint a qualified person to act as receiver and to apply through the Attorney General to a court of equity for the orderly liquidation and dissolution of the association, including injunc-

tive relief restraining the officers from continuing operation of the association. (Chap. 32, par. 922.) But this ends the sole discretionary powers of the Commissioner and receiver, as thereafter their statutory duties and responsibilities are expressly subjected to court regulation, and even the receiver's most routine acts or decisions are conditioned upon application to the court and must be exercised "as the court shall direct." (Chap. 32, pars. 923, 924, 925, 927.) In particular, section 10—7 (par. 927) provides that the receiver must file with the court, for its approval, a final report of his acts and proposed final distribution and that he make such distribution as the court directs.

There is no case cited by the parties or the majority holding that a statutory receiver may appoint legal counsel without court approval. The applicable statute makes no express provision authorizing such unilateral action and, in my opinion, no such authority can be fairly inferred from the terms of the statute, especially in light of the many and significant supervisory powers ascribed to the court. Therefore, due to this lack of a clear expression of legislative intent, or of judicial precedent to the contrary, I would hold that the well-established powers of chancery inherent in liquidation proceedings are operable here and dictate that the receiver should petition the court for leave to retain and for approval of his chosen counsel.

To my mind, this holding is supported by, and perfectly consistent with, long-standing rules of proper court procedure. Moreover, while a *mandamus* action is not conditioned upon its being the sole remedy available (*People ex rel. Palmer* v. *Niehaus,* 356 Ill. 104, 106), logic and the interests of an economical use of our judicial system suggest that the receiver should have petitioned the circuit court for the approval of counsel prior to instituting the present *mandamus* action in this court. Accordingly, I would deny the issuance of the writ.