HARLINGTON WOOD, Jr., Circuit Judge.
 

 This appeal raises the novel issue whether community currency exchanges, which are engaged in the businesses of cashing checks and money orders for a fee and selling or issuing money orders, may be debtors under the Bankruptcy Code.
 

 On February 10,1983, fifty-seven currency exchange corporations filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. Thirty-three of these currency exchanges were located in Illinois. One week before the filing of these chapter 11 petitions, the thirty-three Illinois currency exchanges had been placed under administrative receiverships pursuant to the Illinois Community Currency Exchange Act, Ill.Rev.Stat. ch. 17, §§ 4801-4852 (1981) (the “Act”), which regulates the operation of currency exchanges in Illinois. The Illinois Director of Financial Institutions (the “Director”) also had instituted proceedings to liquidate the thirty-three exchanges.
 
 [1]
 

 After filing the chapter 11 petitions, the exchanges sought from the bankruptcy court an order requiring the Director’s receiver to turn over the exchanges’ property to the bankruptcy trustee. The exchanges’ application was treated by the bankruptcy court as a complaint initiating an adversary proceeding. The Director sought and was granted leave to intervene in the adversary turnover proceedings and the chapter 11 proceedings. He then moved to dismiss the debtors’ application for an order requir
 
 *545
 
 ing his receiver to turn over the debtors’ property and the debtors’ chapter 11 petitions on the ground that the bankruptcy court lacked jurisdiction of the case. Both motions were denied. The bankruptcy court subsequently ordered the appointment of a bankruptcy trustee and ordered the Director’s receiver to turn over the exchanges’ assets to the trustee.
 

 The Director filed separate notices of appeal to the district court from six bankruptcy court orders, and moved the district court for leave to appeal. The orders entered in the chapter 11 proceeding were (1) the order granting limited intervention rights to the Director; (2) the order denying the Director’s motion to dismiss the chapter 11 petitions or, in the alternative, to abstain; and (3) the order appointing a bankruptcy trustee. The orders entered in the adversary turnover proceeding were (4) the order granting limited intervention rights to the Director; (5) the order denying the Director’s motion to strike and dismiss the turnover proceedings; and (6) the order requiring the Director’s receiver to turn over the exchanges’ property to the bankruptcy trustee. The district court granted the Director’s motion for leave to appeal, apparently assuming jurisdiction under 28 U.S.C. § 1334(b),
 
 [2]
 
 and consolidated the appeals.
 

 The major issue on appeal to the district court was whether community currency exchanges are excluded from being debtors under section 109(b)(2) of the Bankruptcy Code. 11 U.S.C. § 109(b)(2). The district court held that they are not. It therefore rejected the Director’s challenge to the bankruptcy court’s jurisdiction, and affirmed all six orders.
 
 In re Cash Currency Exchange, Inc.,
 
 37 B.R. 617 (N.D.Ill.1984).
 

 In its memorandum opinion and order, the district court suggested that its order might be appealed to this court (1) as a final order under the Bankruptcy Code; (2) as a final decision of the district court under 28 U.S.C. § 1291; (3) as a certified interlocutory appeal under 28 U.S.C. § 1292(b); (4) as a collateral order under the
 
 Cohen
 
 doctrine,
 
 Cohen v. Beneficial Industrial Loan Corp.,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); or (5) as an interlocutory appeal under 28 U.S.C. § 1292(a)(2).
 

 I.
 

 The parties apparently have assumed that this court has jurisdiction of this appeal; the jurisdictional issue has not been briefed'by either party. Because it is our duty to determine whether we have jurisdiction of this case,
 
 Liberty Mutual Insurance Co. v. Wetzel,
 
 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976);
 
 In re Bassak,
 
 705 F.2d 234, 236 (7th Cir.1983), we turn to an examination of this threshold issue.
 

 Under the transitional provisions of the Bankruptcy Act of 1978, Pub.L. 95-598, tit. IV, § 405(c)(2), 92 Stat. 2685 (Nov. 6, 1978), which were in force when the Director appealed to the district court and to this court, “a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree” entered by a district court in an appeal from a bankruptcy court. 28 U.S.C. § 1293(b). The district courts’ jurisdiction of appeals from decisions of the bankruptcy courts is not so limited. Final decisions of the bankruptcy court are ap-pealable as of right to the appropriate district court.. 28 U.S.C. § 1334(a). But the district court also is authorized to exercise its discretion to entertain interlocutory appeals from the bankruptcy court. 28 U.S.C. § 1334(b).
 

 This court and others have held that a district court’s decision on an appeal from a bankruptcy court’s interlocutory order generally is not a final order for purposes of further appellate review under section 1293(b).
 
 [3]
 

 In re Riggsby,
 
 745 F.2d
 
 *546
 
 1153, 1154 (7th Cir.1984);
 
 [4]
 

 In re Tidewater Group, Inc.,
 
 734 F.2d 794 (11th Cir.1984);
 
 In re Comer,
 
 716 F.2d 168 (3d Cir.1983). And, a district court’s decision on an appeal from a bankruptcy court’s final order will be reviewed only if it also is final.
 
 Riggsby,
 
 745 F.2d at 1155. Thus, an order by the district court remanding the case to the bankruptcy court for further significant proceedings will not be automatically and immediately appealable to this court, provided the order may be effectively reviewed on appeal from the bankruptcy court’s “final final” decision.
 
 Id.
 
 at 1156.
 

 With these basic principles in mind, we turn to an examination of the six orders appealed in this case. The orders entered by the bankruptcy court in the turnover proceeding (4-6) were, in our view, final orders. Although the orders allowing limited intervention by the Director and denying the Director’s motion to dismiss the turnover proceeding were interlocutory, they became final and appealable as such with the entry of the order requiring the Director’s receiver to turn over the debtors’ property to the bankruptcy trustee. Because this order terminated the adversary proceeding, all three orders were appealable to the district court as final orders. The district court’s affirmance of these orders also was a final decision, ap-pealable to this court under section 1293(b).
 
 In re Tarnow,
 
 749 F.2d 464, 464-65 (7th Cir.1984).
 
 [5]
 

 The three orders entered in the context of the chapter 11 proceeding (1-3) stand on a different footing. The orders permitting limited intervention by the Director, denying his motion to dismiss the chapter 11 petitions, and appointing a bankruptcy trustee were interlocutory and reviewable only if the district court agreed to entertain the appeals. The affirmance of these orders by the district court did not alter their interlocutory character. It follows that this court does not have jurisdiction to review them under section 1293(b). The question remains whether they are reviewable under one of the special procedures for interlocutory appeals, several of which were suggested by the district court to be appropriate bases for our jurisdiction.
 

 As we noted in
 
 Riggsby,
 
 a case in which “the district court rejects an argument that if accepted would terminate the proceeding is a ‘natural’ for appeal under 28 U.S.C. § 1292(b)_” The district court’s rejection of the Director’s contention that currency exchanges may not be debtors under the Bankruptcy Code falls squarely within this class of cases. If this contention had been accepted, the chapter 11 petitions would have been dismissed for lack of jurisdiction. The district court believed that its order “involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the
 
 *547
 
 litigation.” The district court’s “magic words,” however, did not invoke the appropriate response on the part of the Director. The Director failed to ask us within ten days of entry of the district court’s order whether we agreed that the appeal should be decided immediately. 28 U.S.C. § 1292(b). We therefore need not decide the question left unanswered in
 
 Riggsby:
 
 whether section 1292(b) applies to bankruptcy cases.
 

 The district court also suggested its order might be appealable under the “collateral order” doctrine,
 
 Cohen,
 
 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed 1528, which permits orders that “are not final in the sense of disposing of the entire lawsuit before the district court, but are final in the sense of irrevocably deciding the rights of a party, to be appealed under 28 U.S.C. section 1291.”
 
 In re UNR Industries, Inc.,
 
 725 F.2d 1111, 1117 (7th Cir.1984). The doctrine applies to
 

 that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
 

 Cohen,
 
 337 U.S. at 546, 69 S.Ct. at 1225. More recently, the Supreme Court found that, in order to be immediately appealable, “[t]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewa-ble on appeal from a final judgment.”
 
 Coopers & Lybrand v. Livesay,
 
 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). This court has interpreted the last requirement articulated in
 
 Coopers & Lybrand
 
 to mean that the order’s consequences “must be irreversible by subsequent proceedings.”
 
 In re UNR Industries, Inc.,
 
 725 F.2d at 1118 (citing
 
 In re Continental Investment Corp.,
 
 637 F.2d 1, 5 (1st Cir.1980)). In other words, denial of immediate review will cause the appellant “irreparable harm.”
 
 Id.
 
 at 1117.
 

 Although the orders at issue may satisfy the first two requirements, we conclude they cannot meet the third. The denial of a motion to dismiss, the limitation on intervention, and the appointment of a bankruptcy trustee are actions which, if erroneous, may be reversed on appeal
 
 [6]
 
 from the approval of a final plan of reorganization.
 
 [7]
 

 Finally, the district court suggested that its order affirming the appointment of a bankruptcy trustee might be appealable under 28 U.S.C. § 1292(a)(2), which confers jurisdiction on the courts of appeals to entertain appeals from interlocutory orders “appointing receivers.” Our research has revealed no cases in which an order appointing a bankruptcy trustee has been found to be appealable under section 1292(a)(2). In dicta, this court has stated that such an order is not appealable under
 
 *548
 
 that section.
 
 In re Licek Potato Chip Co.,
 
 599 F.2d 181, 184 n. 4 (7th Cir.1979) (citing 7B Moore’s Federal Practice ¶ 1292(a)(2) (2d ed. 1978); 2 Collier on Bankruptcy ¶ 24.27[2.1] at 762.1 n. 7 (14th ed. 1978)). We think it clear that section 1292(a)(2) refers only to “federal equity receivers,” and not to bankruptcy trustees. 7B Moore’s Federal Practice ¶ 1292(a)(2) (2d ed. 1985); 7-Pt. 2 Moore’s Federal Practice ¶ 66.02 (2d ed. 1985).
 

 In conclusion, the three orders entered in the context of the chapter 11 proceeding are not now appealable to this court. We proceed to the merits of the Director’s appeal from the turnover order.
 

 II.
 

 Section 109 of the Bankruptcy Code, 11 U.S.C. § 109 (1982), provides that certain entities may not be debtors under the Code. Section 109(b)(2) provides that:
 

 (b) A person may be a debtor under chapter 7 of this title only if such person is not—
 

 (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act (12 U.S.C. 1813(h)).
 

 “Only a person that may be a debtor under chapter 7 of this title ... may be a debtor under chapter 11 of this title.” 11 U.S.C. § 109(d). A “person” is defined as an individual, a partnership, or a corporation. 11 U.S.C. § 101(33).
 

 The Director argues that the Illinois exchanges, which provide financial services and are regulated by the state in a manner “substantially identical to those entities listed in section 109(b)(2),” cannot be debtors under chapter 11. Applying two well-established tests for determining whether an entity is prohibited from being a debtor under the Code, the state classification test and the independent classification test,
 
 see
 
 2 King, Collier on Bankruptcy § 109.02 (15th ed. 1985), the district court rejected the Director’s contention. We turn to an examination and application of these tests to community currency exchanges.
 

 A.
 

 The state classification test involves examination of the entity’s status under the law of the state of incorporation. If state law classifies the entity as one that is specifically excluded from being a debtor under section 109(b)(2), the inquiry generally ends there. If state law does not so classify the entity, the question becomes whether the entity is the substantial equivalent of those in the excluded class. The starting point in this analysis is a comparison of the powers conferred upon or withheld from the entity with the powers conferred upon or withheld from entities excluded under section 109(b)(2). The court also will examine the relevant statute to determine whether the entity, like those in the excluded class, is subject to extensive state regulation; is subject to express statutory procedures for liquidation or rehabilitation; and conducts business of a public or quasi-public nature.
 
 See First American Bank & Trust Co. v. George,
 
 540 F.2d 343, 349 (8th Cir.),
 
 cert. denied,
 
 429 U.S. 1011, 97 S.Ct. 634, 50 L.Ed.2d 620 (1976), and cases cited therein. The Director would have us equate currency exchanges with banks and credit unions. Not surprisingly, he focuses on the powers these entities share.
 

 The formation and operation of Illinois state banks are governed by the Illinois Banking Act, Ill.Rev.Stat. ch. 17, §§ 301-394. Section 309 of this act, entitled “Formation and primary powers,” provides that:
 

 It shall be lawful to form banks, as herein provided, for the purpose of discount and deposit, buying and selling exchange and doing a general banking business
 
 ...;
 
 and such banks shall have the power to loan money on personal and real estate security and to accept and execute trusts....
 

 The Illinois Supreme Court has acknowledged that the primary powers of a bank
 
 *549
 
 are to lend money, discount notes, receive deposits, and deal in commercial exchange.
 
 Knass v. Madison & Kedzie State Bank,
 
 354 Ill. 554, 563, 188 N.E. 836, 840 (1934). Under Illinois law, savings and loan associations and credit unions also may receive deposits and lend money.
 
 See
 
 Savings and Loan Act, Ill.Rev.Stat. ch. 17, §§ 3001-3293; Credit Union Act, Ill.Rev.Stat. ch. 17, §§ 4401-4471.
 

 Community currency exchanges are governed by the provisions of the Community Currency Exchange Act, Ill.Rev.Stat. ch. 17, §§ 4802-4852. A community currency exchange is defined as
 

 [a]ny person, firm, association, partnership or corporation ... engaged in the business or service of, and providing facilities for, cashing checks, drafts, money orders or any other evidences of money acceptable to such community currency exchange, for a fee or service charge or other consideration, or engaged in the business of selling or issuing money orders under his or their or its name, or any other money orders ..., or engaged in both such businesses, or engaged in performing any one or more of the foregoing services.
 

 Ill.Rev.Stat. ch. 17, § 4802. State and national banks are specifically excepted from this definition.
 
 Id.
 

 Section 4804, entitled “Powers of community currency exchanges,” provides, in pertinent part, that no exchange
 

 shall be permitted to accept money or evidences of money as a deposit to be returned to the depositor or upon the depositor's order [or] to act as bailee or agent for persons, firms, partnerships, associations or corporations to hold money or evidences thereof or the proceeds therefrom for the use and benefit of the owners thereof, and deliver such money or proceeds of evidence of money upon request and direction of such owner or owners.
 

 The Act, then, grants exchanges the authority to cash checks and sell or issue money orders, services that also are rendered by banks. Of key importance, however, is the Act’s express prohibition on the acceptance of deposits by currency exchanges.
 
 [8]
 
 The Director would have us equate currency exchanges with banks and credit unions because they perform two essential services that banks and credit unions do: the cashing of checks and the issuance of money orders. That an entity is empowered to render some of the services provided by a bank has been held to be insufficient to sustain a finding that the entity is the substantial equivalent of a bank.
 

 In the seminal case of
 
 Gamble v. Daniel,
 
 39 F.2d 447 (8th Cir.1930), the court provided the following generalized interpretation of the term “banking corporation” under section 4 of the Bankruptcy Act:
 
 [9]
 

 [In 1910, at the time of the adoption of the “banking corporation” exception], the ordinary conception of a bank was of a business which was based primarily on the receipt of deposits (general or special), which deposits were used by the bank for loans, discounts, buying and selling commercial paper, and other business purposes.... The prime incentive in engaging in the business was the profit to be made, directly or indirectly, from the use of deposits. Most of the then existing state legislation concerning banks had as its principal purpose the protection of such depositors. Much of the right to regulate banks was the pub-
 
 *550
 
 lie interest in protecting depositors. Banking has been a development, and the above was its status in 1910. Other businesses might and did, and still do, deal in commercial paper, make loans or borrow money without any one thinking of them as banks. When a business takes deposits and then does the above or related things, every one knows it is doing a banking business. * * *
 
 In short, while there may be other attributes which a bank may possess, yet a necessary one is the receipt of deposits which it may use in its business.
 

 Id.
 
 at 450-51 (emphasis added). Although the trust company, whose status was the subject of debate in
 
 Gamble,
 
 had most of the powers usually exercised by a bank, it was prohibited from accepting deposits. The court held the trust company was not a “banking corporation” and could be a debt- or under the Bankruptcy Act.
 

 The same result was reached in
 
 In re Prudence Co.,
 
 79 F.2d 77 (2d Cir.),
 
 cert. denied,
 
 296 U.S. 646, 56 S.Ct. 248, 80 L.Ed. 459 (1935). In that case, the directors of an investment company asserted the right to file a petition in bankruptcy. The state superintendent of banks, who had appointed a receiver and taken possession of the company’s property, argued that the company was the substantial equivalent of a bank because the state, in permitting it to be incorporated under state banking law, so classified it; because it was subject to the supervision of the superintendent of banks; and because state law provided a procedure for its liquidation. Determinative of the issue was the company’s lack of authority to receive deposits. The court held it was not a banking corporation within the meaning of section 4 of the Bankruptcy Act.
 

 That the power to accept deposits which are used in the entity’s business is the essential attribute of a banking corporation recently was reaffirmed by the Eighth Circuit in
 
 First American Bank & Trust Co. v. George,
 
 540 F.2d 343. Under state law, the corporation had the authority to receive savings deposits. That it could not undertake demand deposits distinguished it from state banking associations, but did not compel the conclusion that it was not a “banking corporation” within the meaning of section 4 of the Bankruptcy Act.
 

 Our conclusion that a currency exchange is not the substantial equivalent of a bank is supported by
 
 McDougall v. Lueder,
 
 389 Ill. 141, 58 N.E.2d 899 (1945), in which the Illinois Supreme Court entertained,
 
 inter alia,
 
 an equal protection challenge to the provision of section 3 of the Community Currency Exchange Act of 1943 that prohibits the acceptance of deposits by exchanges. The Court found the provision to be a reasonable regulation:
 

 To allow the currency exchanges to engage in such activities would be to allow them to engage in the banking business without the regulations and responsibilities attendant thereupon.
 

 389 Ill. at 151-52, 58 N.E.2d 899. Thus, the Illinois Supreme Court itself has acknowledged that because a currency exchange lacks the authority to accept deposits, it does not do a banking business.
 

 True, currency exchanges are licensed and regulated by the state and there are express statutory provisions for their liquidation. Section 4825 of the Currency Exchange Act allows the Director to appoint a receiver to handle claims against an exchange if the Director determines that the licensee is insolvent or is violating the Act. The receiver may operate the exchange until the Director determines possession should be restored to the licensee or that the business should be liquidated. Section 4826 provides for liquidation under court supervision. Sections 4827, 4829 and 4830 provide for payment of dividends upon money collected by the receiver, the disposition of actions pending against an exchange, and the disposition of the books and records of the receivership. Section 4828 outlines the powers of the receiver.
 

 The district court compared these six sections of the Currency Exchange Act addressing liquidation with the expansive liquidation and dissolution provisions of the Illinois Banking Act, the Illinois Savings
 
 *551
 
 and Loan Act, and the Illinois Insurance Code, and concluded that the “stark contrast” between the skeletal liquidation scheme for currency exchanges and the comprehensive schemes for the other institutions indicated that the Illinois legislature did not view currency exchanges and the banking institutions excluded by section 109(b)(2) as substantially equivalent entities. The Director, who takes exception to any test that merely counts the number of statutory provisions addressing liquidation, notes that only one statutory provision governs the liquidation of credit unions,
 
 see
 
 Ill.Rev.Stat. ch. 17, § 4463, which are among the institutions expressly excluded from bankruptcy under section 109(b)(2).
 

 The district court’s approach was not improper. The more comprehensive the liquidation scheme, the stronger the indication that the state sees a strong public interest in direct governmental supervision and control of the liquidation or dissolution of the institution. After comparing and contrasting the liquidation schemes provided for these institutions by state law,
 
 [10]
 
 we agree with the district court’s assessment that the Illinois legislature did not view currency exchanges as the substantial equivalents of the other entities. The Director’s reference to the single provision for the liquidation of credit unions does not alter our conclusion; rather, the Director has unwittingly made our next point. Under the state classification test, the provision of a statutory scheme for an entity’s liquidation never has been deemed to be sufficient to classify that entity as one excluded under section 109(b)(2).
 
 See, e.g., In re Prudence,
 
 79 F.2d at 79. The touchstone of the test is the power to accept deposits, a statutorily-conferred authority that credit unions share with the other excluded entities.
 

 Our observation also applies to the last relevant inquiry: whether the entity is involved in a business of a public or quasi-public nature. This characteristic is found in conjunction with extensive state regulation and extensive liquidation procedures. We recognize that the activities of currency exchanges affect the public interest, particularly because currency exchanges provide vital services to communities in which banks are sparse. Because this is so, the Illinois legislature has declared that “[i]t is in the public interest to promote and foster the community currency exchange business and to insure the financial stability thereof.” Ill.Rev.Stat. ch. 17, § 4809. This public interest is protected by the licensing, insurance, and bonding requirements of the Act. The liquidation procedures of the Act, however, speak only of protection of the rights of creditors.
 
 See
 
 Ill.Rev.Stat. ch. 17 §§ 4825-4830. The public interest in ensuring that currency exchanges remain financially stable and therefore capable of servicing the community is not vindicated by the liquidation provisions of the Act. In contrast, states provide comprehensive supervision and liquidation schemes for entities excluded under section 109(b)(2) largely “in order to protect the millions of persons who deal with them on the faith of the protection afforded by direct governmental supervision and control.”
 
 Woolsey v. Security Trust Co.,
 
 74 F.2d 334, 337 (5th Cir.1934). The state’s overriding concern is with protection of the depositors, and comprehensive liquidation schemes are designed to afford this protection. Although public funds may be at risk when a currency exchange becomes insolvent, protection of these funds is not the primary goal of the Act’s liquidation scheme. We find that permitting currency exchanges to seek relief under the Bankruptcy Code does not violate the public interest.
 

 In conclusion, under the state classification test, a currency exchange is not the substantial equivalent of the excluded entities.
 

 B.
 

 Applying the independent classification test, under which the court con-
 
 *552
 
 strues section 109(b)(2) itself, the district court found that currency exchanges do not fall within its exclusionary language. Our construction of that section leads us to agree. The entities excluded from being debtors under the Code are specifically enumerated. The general rule of statutory construction is that the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded.
 
 Expressio unius est exclusio alterius.
 
 2A Sutherland Statutory Construction § 47.23 (1973
 
 &
 
 Supp.1983).
 
 [11]
 
 If Congress had intended to make the list of excluded entities illustrative rather than exhaustive, it could have used the rule of statutory construction found in the Bankruptcy Code which provides that the words “ ‘includes’ and ‘including’ are not limiting.” 11 U.S.C. § 102(3). Because Congress chose not to do so, we conclude that the list of excluded entities is intended to be exhaustive.
 

 The term “banking corporation” in section 4(a) of the Bankruptcy Act was replaced with a list of the specific types of financial institutions excluded from seeking relief under the Bankruptcy Code. The legislative history of section 109(b)(2) indicates that the “banking corporation” exclusion was expanded in light of changes in the banking laws. H.R.Rep. No. 595, 95th Cong., 1st Sess. 318-19 (1977), U.S.Code Cong. & Admin.News, pp. 5787, 6275, 6276. Nevertheless, it seems clear that the expansion was not intended to bring those institutions which do not do a banking business within the ambit of the exclusion. The institutions listed all accept deposits, the essential function of a banking institution. Currency exchanges do not do a banking business, and we find no basis for implicitly including them in a list of excluded institutions that purports to be exhaustive.
 

 We hold that currency exchanges are not precluded from seeking bankruptcy relief by section 109(b)(2).
 

 III.
 

 The Director launches a final attack on the jurisdiction of the bankruptcy court based upon the state law governing administrative receiverships. The cases he cites establish that, under Illinois law, administrative receivers have exclusive custody of and title to all assets of the entity placed under receivership, including causes of action.
 
 People ex rel. Knight v. O’Brien,
 
 40 Ill.2d 354, 240 N.E.2d 686 (1969) (administrative receivership created under authority of Illinois Savings and Loan Act);
 
 McIlvaine v. City National Bank & Trust Co.,
 
 314 Ill.App. 496, 42 N.E.2d 93 (1942) (administrative receivership created under authority of Illinois Banking Act);
 
 People ex rel. Palmer v. Niehaus,
 
 356 Ill. 104, 190 N.E. 349 (1934) (administrative receivership created under authority of Illinois Insurance Liquidation Act). For example, it was held in
 
 Mcllvaine
 
 that a stockholder of the bank was precluded from bringing a derivative suit in the name of the bank because the bank's rights were vested exclusively in the receiver. The Director contends that, by parity of reasoning, the exchanges were precluded from filing the chapter 11 petitions because all causes of action vested exclusively in his receiver.
 

 The district court held, and we agree, that the exclusivity of an administrative receiver’s title to all assets under state law is irrelevant to the determination whether a particular entity may file for bankruptcy relief. As the Director concedes, a corporation may not be precluded by state law from availing itself of federal bankruptcy law.
 
 International Shoe Co. v. Pinkus,
 
 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318 (1929). Title 11 suspends the operation of state insolvency laws except as to those classes of persons specifically excluded from being debtors under the Code. The Director’s contention that the exchanges are not “ordinary corporations,”
 
 *553
 
 but rather “special corporations whose very existence depended upon licensing by the State of Illinois” does not alter our conclusion that the receiver’s exclusive title to the assets did not preclude the filing of the petitions. He is simply rephrasing the argument, which we have already rejected, that currency exchanges are akin to those entities which are precluded from being debtors under 11 U.S.C. § 109(b)(2).
 

 Moreover, the Director’s argument ignores Congress’ recognition that a third party may have taken possession, custody, or control of the debtor’s assets prior to the filing of a bankruptcy petition. If such party is a custodian within the meaning of 11 U.S.C. § 101(10), it must turn over the property of the debtor to the bankruptcy trustee. 11 U.S.C. § 543(b)(1).
 
 [12]
 

 The Director contends that the district court erred in finding that his receiver is a custodian within the meaning of section 101(10) of the Bankruptcy Code, 11 U.S.C. § 101(10). A custodian includes a(n)
 

 (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
 

 (B) assignee under a general assignment for the benefit of the debtor’s creditors; or
 

 (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor’s creditors.
 

 The legislative history of section 101(10) indicates that Congress intended the term “custodian” to encompass a variety of pre-petition agents who had taken charge of the debtor’s assets. For example, the Senate Report provides:
 

 There is no similar definition in current law. It is defined to facilitate drafting, and means a prepetition liquidator of the debtor’s property, such as an assignee for the benefit of creditors, a receiver of the debtor’s property, or administrator of the debtor’s property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 23 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5809.
 

 The Director seizes upon this portion of the legislative history to argue that the term “custodian” encompasses only court-appointed receivers and not administrative receivers. In light of the unre-strictive language used in this definition, that Congress did not refer specifically to administrative receivers in the legislative history is not, in our view, indicative of its intent to exclude them. As the legislative history illustrates, the categories of custodians are descriptive rather than exhaustive. Congress defined the term broadly to include third parties who have taken charge of the debtor’s assets for the general benefit of creditors.
 
 See, e.g., In re Pride Foods, Inc.,
 
 22 B.R. 356 (Bankr.D.Neb.1982);
 
 In re Lewis,
 
 12 B.R. 106 (Bankr.D.Ga.1981). The Director’s receiver falls within this broad class of prepetition liquidators.
 

 We fail to understand how the fact that the Director’s receiver — as distinguished from a court-appointed receiver — holds title to the exchanges’ assets undermines our conclusion. We find no indication that Congress intended to limit the term “custodi
 
 *554
 
 an” to those prepetition liquidators who merely hold the debtor’s property. Indeed, the legislative history of section 543 supports the conclusion that the term “custodian” includes prepetition liquidators who hold title to the debtor's assets.
 

 Under section 543(a) of the Bankruptcy Code, 11 U.S.C. § 543(a),
 

 [a] custodian with knowledge of the commencement of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor, proceeds of such property, or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.
 

 The legislative history of this section provides, in pertinent part, that:
 

 This section requires a custodian appointed before the bankruptcy case to deliver to the trustee and to account for property that has come into his possession, custody, or control as a custodian.
 
 “Property of the debtor” in section (a) includes property that was property of the debtor at the time the custodian took the property, but the title to which passed to the custodian.
 

 H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 84 (1978), U.S.Code Cong.
 
 &
 
 Admin.News, pp. 5787, 5870, 6326 (emphasis added).
 

 This clear indication of Congressional intent also disposes of the Director’s contention that because his receiver became vested with title to the assets of the exchanges pursuant to section 15.1 of the Currency Exchange Act, the assets could not be deemed property of the debtor for the purpose of turnover pursuant to section 543.
 
 [13]
 

 The Director cites
 
 In re Teltronics, Ltd.,
 
 649 F.2d 1236 (7th Cir.1981), for the broad proposition that the bankruptcy court had no authority to order the turnover because the assets of the debtors became the property of his receiver. We find the Director’s reliance on
 
 In re Teltronics
 
 totally misplaced. The issue presented in that case was whether money held by a state court receiver under the authority of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121V2, § 261
 
 et seq.,
 
 was property of the bankruptcy estate and thus subject to turnover to the bankruptcy trustee. This court’s holding that the property in issue was not part of the bankruptcy estate turned not on any conclusion that upon initiation of the receivership the debtor's assets became property of the receiver which could never be part of the bankruptcy estate, but upon the well-established rule that property obtained by the bankrupt by fraud is not part of the bankruptcy estate. The Director has made no such argument here.
 

 IV.
 

 The Director’s final challenges to the bankruptcy proceedings are that they should have been stayed or, alternatively, that the bankruptcy court should have abstained. We address these contentions in turn.
 

 The Director seeks to invoke an exception to the automatic stay provisions of section 362 of the Code. Under section 362, the filing of a bankruptcy petition operates, with certain enumerated exceptions, as a stay of all judicial and non-judicial proceedings against the debtor or his property. Under section 362(b)(4), “[t]he commencement or continuation of an action or proceeding by a governmental unit to enforce [its] police or regulatory power” will not be stayed. The Director contends that liquidation proceedings under the Currency Exchange Act fall within this exception.
 

 The legislative history assists in determining the scope of the exception contained in section 362(b)(4):
 

 
 *555
 
 Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. .52 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5838.
 

 This exception has been narrowly construed to apply to the enforcement of state laws affecting health, welfare, morals and safety, but not to “regulatory laws that directly conflict with the control of the
 
 res
 
 or property by the bankruptcy court.”
 
 State of Missouri v. United States Banruptcy Court,
 
 647 F.2d 768, 776 (8th Cir.1981), ce
 
 rt. denied,
 
 454 U.S. 1162, 102 S.Ct. 1035, 71 L.Ed.2d 318 (1982). Thus, in
 
 State of Missouri,
 
 the court held the exception inapplicable to state liquidation proceedings involving insolvent grain warehouses, stating that
 

 [Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors’ property and not to matters of public safety and health. Missouri’s laws, by governing the operation and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do not fall within the section 362(b)(4) exception.
 

 Id.
 

 So too the liquidation provisions of the Community Currency Exchange Act are designed to protect the rights of creditors. And, the liquidation procedures, by vesting control of the debtors’ property in the receiver, “directly conflict with the control of the property by the bankruptcy court.” We hold that the state proceedings at issue here do not fall within the ambit of the section 362(b)(4) exception. .
 

 In re Shippers Interstate Service, Inc.,
 
 618 F.2d 9 (7th Cir.1980), cited by the Director for the broad proposition that persons subject to regulatory enforcement proceedings should not be permitted to seek the sanctuary of bankruptcy court, supports rather than undermines our conclusion. The issue presented in that case was whether the automatic stay rule promulgated under chapter XI of the Bankruptcy Act of 1898 applied to unfair labor practice proceedings instituted by the National Labor Relations Board. Noting that the regulatory proceedings at issue did not threaten the assets of the estate, this court held that the automatic stay rule did not apply.
 

 The Director also seeks review of the bankruptcy court’s decision not to abstain from entertaining the chapter 11 petitions pursuant to 11 U.S.C. § 305. Section 305(a)(1) provides that:
 

 (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
 

 (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.
 

 Of particular relevance is section 305(c), which provides that an order under subsection (a) dismissing or suspending the proceedings or refusing to do either “is not reviewable by appeal or otherwise.” Despite this provision, the district court addressed the Director’s argument that the bankruptcy court should have abstained, concluding that review of an abstention order is proper “where, as here, the appeal raises a jurisdictional issue.”
 
 In re Cash Currency Exchange, Inc.,
 
 37 B.R. at 629 n. 12. This court has found the statutory prohibition of appellate review of abstention decisions to be “clear and, therefore, conclusive.”
 
 In re Covey,
 
 650 F.2d 877, 880 (7th Cir.1981). No exceptions to the prohibition were provided by Congress. Even if this court were to sanction the judicial creation of exceptions to this rule, which we do not, the one created by the district court must fail. Implicit in the absention provision, which assumes the bankruptcy court has jurisdiction of the case, is recognition that there are cases in which it may be appropriate for the court
 
 *556
 
 to decline to exercise its jurisdiction. The Director appropriately challenged the bankruptcy court’s jurisdiction via motions to dismiss. Once that court determined it had jurisdiction, the decision whether to abstain became an unreviewable exercise of discretion.
 

 Finally, the Director contends that liquidation proceedings under the Act are the type of specialized, ongoing state regulatory proceedings protected from federal court interference under the abstention doctrine of
 
 Burford v. Sun Oil Co.,
 
 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Involved in
 
 Burford
 
 was a state’s complex oil conservation scheme. Questions arising under that comprehensive administrative scheme were adjudicated by a specialized tribunal which was charged with the responsibility of establishing a coherent policy on the conservation of the state’s major resource, a matter of substantial public concern. In challenging an administrative decision to grant an oil-drilling permit, Sun Oil attacked the state policy expressed in that decision. Noting that “conflicts in the interpretation of state law, dangerous to the success of state policies, [were] almost certain to result from the intervention of the lower federal courts,”
 
 id
 
 at 334, 63 S.Ct. at 1107, the Court found abstention appropriate.
 

 The Director primarily relies upon
 
 Levy v. Lewis,
 
 635 F.2d 960 (2d Cir.1980), a suit by a retired employee of an insurance company against the state superintendent of insurance, who was liquidating the company pursuant to state law. The retiree challenged, as a violation of ERISA, the liquidator’s decision to terminate his retirement benefits. The court held that, under the authority of
 
 Burford,
 
 the retiree’s claim that the superintendent violated the terms of the employee welfare fund should have been left to the state courts for determination. The factors found to be determinative of the abstention issue were the state’s complex administrative and judicial system for regulating and liquidating domestic insurance companies; the superintendent’s expertise; the congressional mandate, expressed in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, that state regulation of the insurance industry be free from federal interference; and the disruption of the orderly and efficient distribution of assets to claimants that might be occasioned by federal court interference.
 

 Levy
 
 provides little support for the Director’s position. Insurance companies are among those entities precluded from being debtors under the Code because Congress has determined not to interfere with the state’s comprehensive liquidation scheme. In light of this, abstention from the exercise of federal court jurisdiction, as in
 
 Levy,
 
 over claims arising out of such state liquidation proceedings is particularly appropriate. We have determined that currency exchanges may be debtors under the Code. In effect, we have found no federal policy of noninterference with the state’s scheme for liquidating currency exchanges. Because of the paramountcy of federal bankruptcy law, the policies underlying the abstention doctrine have little or no force in a case in which a proper debtor pursues his right to seek relief under the Code. The bankruptcy court correctly refused to abstain.
 

 V.
 

 In conclusion, we reject the Director’s contention that the thirty-three Illinois currency exchanges are precluded from seeking relief under the Code. The bankruptcy court has jurisdiction of the case and properly ordered the Director’s receiver to turn over debtor’s property to the bankruptcy trustee.
 

 AFFIRMED.
 

 [1]
 

 . If the Director, who is responsible for administering the Act, determines that a licensee is insolvent or is violating provisions of the Act, he is authorized to appoint a receiver to take possession of and title to the books, records and assets of the licensee. Ill.Rev.Stat. ch. 17, § 4825. The receiver may operate the exchange until the Director determines that possession and title should be restored to the exchange or that the exchange should be liquidated.
 
 Id.
 
 at §§ 4825-4826. The Director or the Director’s receiver controls the exchange's assets until possession is restored or a liquidation proceeding is completed. .
 

 [2]
 

 . Section 1334(b) provides that the district courts “shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court to which the appeal is taken.”
 

 [3]
 

 . There are some exceptions to this rule. In some instances, the action taken by the district
 
 *546
 
 court may transform an interlocutory order of the bankruptcy court into a final order for the purpose of appellate review by this court. An obvious example would be an order by the bankruptcy court denying a motion to dismiss the proceedings for lack of jurisdiction. If on appeal the district court determined that the bankruptcy court lacked jurisdiction and reversed this order, the decision of the district court would be a final appealable order. Similarly, although a bankruptcy court order granting intervention is interlocutory, a district court decision reversing this order and denying intervention would be a final appealable order.
 

 [4]
 

 . In
 
 Riggsby,
 
 the transitional provisions of the 1978 Act were in force when the bank appealed to the district court and apparently the superseding amendments made in 1984 were in force when Riggsby appealed to this court. The 1984 amendments to the Bankruptcy Act of 1978 added two new jurisdictional sections to the Judicial Code:
 
 28 U.S.C.
 
 §§ 157 and 158. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (July 10, 1984). We noted that the jurisdictional provisions of the 1984 amendments are virtually identical to the jurisdictional provisions of the 1978 Act,
 
 see
 
 28 U.S.C. §§ 1293(b) and 1334(a), (b), and appear to have the same meaning. We therefore justifiably rely upon cases applying the jurisdictional provisions of the 1984 amendments.
 

 [5]
 

 . The Director sought to intervene in the turnover proceeding for the purpose of requesting dismissal of that proceeding. He was granted leave to do so, and obviously raises no challenge on appeal to this action by the bankruptcy court.
 

 [6]
 

 . That the denial of the motion to dismiss the chapter 11 petitions will
 
 not
 
 be reversed on appeal from the approval of a final plan of reorganization does not alter our
 
 Cohen
 
 analysis. The Director, who raised the same jurisdictional arguments in support of his motion to dismiss the chapter 11 petitions, the disposition of which is presently unappealable, and his motion to dismiss the turnover proceeding, the disposition of which is presently appealable, will be heard on the jurisdictional issue now and our decision on the turnover appeals therefore will be binding in any subsequent appeal by the Director from the denial of the motion to dismiss the chapter 11 petitions. The order denying the Director’s motion to dimiss the chapter 11 petitions did not irrevocably decide the debtors’ right to proceed in bankruptcy court. Rather, it is our holding in this appeal of the turnover decision that has the effect of foreclosing any possibility of the Director succeeding on the jurisdictional argument in a later appeal from the denial of the motion to dismiss the chapter 11 petitions.
 

 [7]
 

 . We see no reason why the Director would not have standing to appeal from a final plan of reorganization. The bankruptcy court allowed the Director to intervene in recognition of his legitimate interest in whether the debtors would be permitted to proceed in the bankruptcy court. And, the district court expanded the limited intervention rights given the Director by the bankruptcy court by ordering that the receiver and the trustee consult with the Director and consider any objections or suggestions he might have regarding the sale of the thirty-three Illinois currency exchanges.
 

 [8]
 

 . Although the Act does not expressly prohibit exchanges from lending money or otherwise extending credit, it does not authorize exchanges to perform these services either. Notably, all other financial institutions which have the authority to do so are expressly granted that authority by statute. See Illinois Banking Act, Ill.Rev.Stat. ch. 17, § 309; Savings and Loan Act, Ill.Rev.Stat. ch. 17, § 3121; Credit Union Act, IIl.Rev.Stat. ch. 17, § 4414.
 

 [9]
 

 . Although the term "banking corporation" has been replaced in 11 U.S.C. § 109(b)(2) with a list of specific entities, cases decided under section 4 are clearly relevant to an understanding of the congressional policy underlying the exclusion. Additionally, we rely upon these cases because our research has revealed no cases presenting the question whether a particular entity is the equivalent of one of the banking institutions now listed in section 109(b)(2).
 

 [10]
 

 .
 
 Compare
 
 Ill.Rev.Stat. ch. 17 §§ 4825-4830
 
 with
 
 Ill.Rev.Stat. ch. 17, §§ 362-386
 
 and
 
 Ill.Rev. stat. ch. 17, §§ 3221-3267
 
 and
 
 Ill.Rev.Stat. ch. 73, §§ 799-833.
 

 [11]
 

 . As debtors point out, we may presume that Congress was aware of the existence of currency exchanges when it enacted the Code. From Congress’ failure to include them in section 109(b)(2) we may infer its intent to make them eligible for bankruptcy relief.
 

 [12]
 

 . Section 543(b) provides that the custodian shall—
 

 (1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian’s possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case;
 

 (2) file an accounting of any property of the debtor, or proceeds of such property, that, at any time, came into the possession, custody, or control of such custodian.
 

 [13]
 

 . A receiver appointed under section 15.1 of the Community Currency Exchange Act is vested with title to the exchange’s assets solely for the purpose of effecting the liquidation. The licensee retains its ownership interest in the assets and is entitled to any surplus after creditors are paid. That interest is "property of the estate” under section 541(a) of the Code.