**In re SUNDANCE CORPORATION, Debtor.**

**Bankruptcy No. 88–40137.**

United States Bankruptcy Court, D. Montana.

March 11, 1988.

Jerome Shulkin, Seattle, Wash., Pierre L. Bacheller, Billings, Mont., for debtor.

John P. Paul, Great Falls, Mont., Douglas M. Ragen, Miller, Nash, Wiener Hager & Carlson, Portland, Or., for Community 1st Fed. Sav. & Loan.

Michael A. Arch, Wenatchee, Wash., for Scott Property Management.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, Community First Federal Savings and Loan Association (Community) has filed a Motion to Excuse Compliance of a State Court Receiver (Scott Property Management, Inc. by its President Scott McDougall) with Section 543 of the Bankruptcy Code. An expedited hearing on the motion was held on March 10, 1988, with the Debtor appearing through its counsel in resistance to the motion. Evidence was taken by the Court and the matter is now ready for decision.

Sundance is fee title owner to over 2,500 acres of an apple orchard located in the State of Washington, which is the only asset of the debtor corporation. Community sought to foreclose its second mortgage lien against the property through a state court action in the Superior Court of the State of Washington, County of Grant, and ancillary to such foreclosure action, sought and received an order dated February 11, 1985, from the state court appointing Scott Property Management, Inc. (Scott McDougall) as receiver to "take the necessary action and expend the necessary funds to prune and spread the orchard on the sub-

ject property". McDougall has now been responsible for the daily care and operation of the orchard since 1985 and presently continues in that position. On February 1, 1988, after trial of the state foreclosure case, the state court determined and entered Judgment that Community was not entitled to foreclosure on its mortgage because of its "unclean hands" arising from unconscionable conduct in the creation of the mortgage, and therefore the state court complaint for foreclosure was ordered dismissed with prejudice. Nevertheless, the state court evidently further concluded that by reason of the receivership, since Community had solely financed the continued apple orchard operation, the court found an "equitable" lien resulted of approximately 7.1 million dollars against the property. Accordingly, the state court ordered the property be sold on March 18, 1988, to satisfy such lien and a first mortgage on the property held by Mutual Life Insurance Company of New York (MONY) in the amount of 1.8 million dollars. The orchard has an approximate value of 12.9 million dollars, and will produce about 400,000 to 500,000 boxes of apples annually. The crop year for the orchard runs from November through the end of October of each year, so that all parties conceded that approximately $380,000.00 of operating funds must be expended in care of the crop within the next 60 days. It is further conceded by the parties that the asset has value only if the orchard is able to produce an apple crop and to that end both the Debtor and Community have sought to persuade the Court that each is the best responsible party to care for the property.

Debtor sought relief under Chapter 11 of the Code by petition filed February 26, 1988, which has effectively stayed all further state court foreclosure proceedings by virtue of the automatic stay provisions of Section 362 of the Code. In such case, under § 543 of the Bankruptcy Code, where a custodian is in charge of the debtor's property and has knowledge of the commencement of a case under Title 11, the custodian "may not make any disbursement from, or take any action in the administration of, property of the debtor * * *

except such action as is necessary to preserve such property". Section 543(b) provides the custodian shall deliver the property to the debtor and file an accounting with the court under Bankruptcy Rule 6002. Thus, the Code provides for effective termination of a receivership upon commencement of the Chapter 11 case, except, however, in two limited circumstances. Section 543(d) states:

> "After notice and hearing, the bankruptcy court—
>
> (1) may excuse compliance with subsections (a), (b) or (c) of this section, if the interests of creditors and, if the debtor is not insolvent, or equity security holders would be better served by permitting a custodian to continue in possession, custody or control of such property, and
>
> (2) shall excuse compliance with subsection (a) and (b)(1) of this section if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice."

Therefore, subsection (d) is an abstention policy which permits the custodianship to continue if the best interest of creditors and stockholders is served, or the property has been assigned by the Debtor for the benefit of creditors.

■ While Community argues that the state court receiver, being appointed more than 120 days from the date the Chapter 11 petition was filed, is the same as "an assignee for the benefit of the debtor's creditors", thus making it mandatory that the receiver remain in possession, I do not concur with such argument. Custodian is defined in subsection 101(10) of the Code as:

> "(10) 'custodian' means—
>
> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or

(C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors;"

The *Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.1985), held after setting forth the definition under § 101(10):

"The legislative history of section 101(10) indicates that Congress intended the term 'custodian' to encompass a variety of prepetition agents who had taken charge of the debtor's assets. For example, the Senate Report provides:

There is no similar definition in current law. It is defined to facilitate drafting, and means a prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.

S.Rep. No. 989, 95th Cong., 2nd Sess. 23 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5809.

\* \* \* \* \* \*

As the legislative history illustrates, the categories of custodians are descriptive rather than exhaustive. Congress defined the term broadly to include third parties who have taken charge of the debtor's assets for the general benefit of creditors. *See, e.g., In re Pride Foods, Inc.*, 22 B.R. 356 (Bankr.D.Neb.1982); *In re Lewis*, 12 B.R. 106 (Bankr.D.Ga. 1981)." *Id.* at 553.

Section 101(10) is not without limitation, however. *See e.g., U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed. 2d 515 (1983) (IRS is not a custodian by virtue of a tax lien which grants it a possessory interest pre-petition). A plain reading of § 101(10) with § 543(d)(2) convinces this Court that such subsection is not applicable to the facts here, where a state court receiver is placed in possession of the Debtor's property through judicial process, rather than where the debtor creates a consensual possession of the property for the benefit of its creditors, and thereby voluntarily assigns the property to the assignee for administration or liquidation. An assignee for the benefit of creditors is one to whom, under an insolvent or bankrupt law, the whole estate of a debtor is voluntarily transferred to be administered for the benefit of creditors.

"A general assignment for the benefit of creditors is ordinarily a conveyance by a debtor without consideration from the grantee of substantially all his property to a party in trust to collect the amount owing to him to sell and convey the property, to distribute the proceeds of all the property among his creditors, and to return the surplus, if any, to the debtor." *Missouri–American Electric Co. v. Hamilton–Brown [Shoe] Co.*, 165 F. 283 (CCA 8).

Unlike the appointment of a receiver, the element of voluntary trust is present in every assignment, where permitted by state law. *See, e.g., Stanton Bank v. Northern Mont. Assn. of Credit Men*, 77 Mont. 153, 250 Pac. 596, 597 (1926):

"Under the rules applicable to common-law assignments for the benefit of creditors, counsel's second contention is correct. Such an assignment created a trust, the power to compel the due observance and execution of which was peculiarly and exclusively of equitable cognizance, and this jurisdiction is not disturbed by statutory provisions which merely create and prescribe a new procedure for the administration and settlement of insolvent estate."

By way of further example, Montana statutory law provides an insolvent debtor may, in good faith, execute an assignment of property to one or more assignees in trust for the satisfaction of his creditors. Mont. Code Ann., Sections 31–2–201, et. seq. By

contrast of such extra-judicial assignment, as Community points out in its brief,

> "A receiver is an indifferent person between the parties to a cause, appointed by the court to receive and preserve the property or fund in litigation *pendente lite,* when it does not seem reasonable to the court that either party should hold it. He is not the agent or representative of either party to the action, but is uniformly regarded as an officer of the court, exercising his functions in the interest of neither plaintiff nor defendant but for the common benefit of all parties in interest—Being an officer of the court, the fund or property intrusted to his care is regarded as being *in custodia legis* for the benefit of whoever may finally establish title thereto, the court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred upon him by the order of his appointment, or such as are derived from the established practice of the courts of equity—." *Gloyd v. Rutherford,* 62 Wn. 2d 59, 60–61, 380 P.2d 867 (1963).

Under § 543(d)(2) Congress specifically elected to place an assignee for the benefit of creditors in a different position than a state court receiver, obviously recognizing that the trust relationship reposed in the assignee warranted continual possession of the Debtor's property in that person, if the assignment was made for 120 days before the Order of Relief. The Washington state court receiver simply does not fit into that definition as an assignee for the benefit of creditors, as subsection 101(10) makes clear by definition, and thus I conclude Community's reliance on 543(d)(2) is without merit.

■ The crux of the controversy must be decided under Section 523(d)(1), and to that end, the best interest of creditors must be examined. As noted above, the property has been managed by McDougall since 1985, under an arrangement where the state court provided that Community fund the operation and maintenance of the property. I find McDougall has ably performed his duties as receiver. The Debtor, at this time, seeks recovery of possession of the orchard to reduce the costs of receivership ($8,100.00 per month), and to that end has made arrangement with an able consultant and a foreman presently on the property to manage the property. Since the foreman has been performing the same task for the receiver, it is apparent the Debtor's selection of competent management is also in the best interest of creditors. However, the matter of Debtor funding the operation has been brought into serious dispute. The Debtor's evidence shows that it had made arrangements with the first mortgage holder (MONY) to fund the balance of the 1988 operation on a basis where MONY would receive a super priority position for the advancement of the operating funds. To that end, the Debtor had made arrangements for suitable operating personnel to maintain and care for the orchard. Those plans have now been upset by Community. On the day of the hearing, Community made an offer to MONY to buy-out its first mortgage position in 30 days, upon condition the orchard operation be preserved during that period of time. MONY through its counsel, seems receptive to the offer. If such buyout occurs, MONY will be taken out of the picture, and as a result, the Debtor's present plans for funding the daily operation will have aborted. The Debtor, to date, has not shown to the Court any other alternative of funding the operation, and Debtor's bankruptcy schedules clearly show it has no cash available to keep the orchard in operation. The matter is further complicated by the present legal status of the receiver. As noted above, Community's complaint to foreclose its mortgage was dismissed. Yet, the very origin of the receiver's appointment *in custodia legis* derives from the filing of that dismissed complaint. The original order of appointment of February 11, 1985, as amended November 15, 1985, states "Scott Property Management, Inc., a Washington corporation, shall serve as the Receiver in this case for the period of time from February 11, 1985, through January 31, 1986 * * *." While the receiver was obviously continued in office post–1986, the judgment dismissing the complaint is silent as to the continuation of the receiver in office. By

letter of January 21, 1988, the State Superior Court Judge, indicated, without entry of a formal order, that Community was granted an equitable lien against the premises, the amount of which "will need to be adjusted for advances made during 1988 prior to the sale" and "that lien follows not only from equity but from the terms of the Order for Appointment of Receiver and Authorization to Disburse Funds entered herein on February 11, 1985, and the Order Amending Receivership Order entered November 15, 1985". Moreover, state court proceedings to clarify such letter were interrupted by the filing of the Chapter 11 case. The matter as to legal status of the receiver, as well as the finality of Community's offer to MONY, are thus left unresolved, in a situation where the orchard, by all parties' agreement, needs immediate and daily care.

Under these circumstances, the Court is left with no alternative than to keep the present custodian Scott Property Management, and its President Scott McDougall, in control of the Debtor's property, funded by Community, pending a re-hearing or resolution of the issues described above. Such will maintain the status quo. I find and conclude such interim arrangement must continue for the best interests of creditors. By this conclusion, I do not foreclose the Debtor from seeking turn over of property upon its future acquisition of suitable financing.

IT IS ORDERED the motion of Community First Federal Savings and Loan Association to excuse the custodian Scott Property Management, Inc. from the provisions of 11 U.S.C. § 543(a), (b) and (c) is granted with leave of the Debtor, or any party in interest, to reconsider this Order upon proper application at any time.